**George F. VALASSIS, Plaintiff and Counter–Defendant,**

v.

**Randon A. SAMELSON, Defendant and Counter–Plaintiff.**

**No. 91–CV–74029.**

United States District Court, E.D. Michigan, S.D.

July 2, 1992.

Samuel C. Damren, Bloomfield Hills, Mich. and Richard A. Rossman, Detroit, Mich., for plaintiff.

Eugene Driker, Detroit, Mich., for defendant.

OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PERMISSION TO USE AND INTERVIEW MARY BAER AND DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER

ROSEN, District Judge.

### INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Permission to Use and Interview Mary Baer and Defendant's Motion for Protective Order.

The instant issue was first raised by the parties in letters filed with the Court. Oral argument was heard on May 14, 1992. At that time, the Court decided to consider the parties' letters as their motions. It also permitted the parties to file supplemental briefs on the issues raised at the hearing. Defendant Randon Samelson ("Samelson") filed his supplemental brief on May 18, 1992 and Plaintiff George Valassis ("Valassis") responded on May 21, 1992.

### FACTS

During the 1980s, Samelson and Valassis formed a series of partnerships and limited partnerships for the purpose of investing in commercial real estate. The relationship between the parties soured, and, in August 1991, Valassis filed lawsuits in state and federal court against Samelson and several

partnerships and/or their respective general partners. Samelson then filed counterclaims against Valassis.

The instant dispute concerns Mary Baer, a former employee of Samelson Development Corporation ("SDC"), Samelson's affiliate corporation. From January 1985 through April 1991, Ms. Baer worked for SDC in the positions of Accounting Manager, Manager of Construction Accounting, Assistant Controller, and, finally, Controller. While at SDC, Ms. Baer was allegedly privy to a large amount of confidential and sensitive information, much of which, says Samelson, is directly related to the pending state and federal actions. In April 1991, Ms. Baer left SDC to join Franklin Management Company, a business in which Valassis has an ownership interest.

Ms. Baer has been asked by Valassis to (1) provide information through informal interviews and (2) assist in the review of a large number of documents received from Samelson pursuant to a discovery order. Ms. Baer has agreed to aid Valassis.

Samelson objects to this proposed use of Ms. Baer on two grounds. He claims that such use would (1) violate the Michigan Rules of Professional Conduct and (2) open the door to the commission of the tort of misappropriation of trade secrets. To avoid these possible violations of ethical rules and tort law, Samelson asks the Court to prevent Valassis from engaging in informal contact with Ms. Baer.

## DISCUSSION

### I. COMMUNICATION WITH FORMER EMPLOYEE

#### A. *Rule 4.2*

The starting point for the consideration of an attorney's right to contact an opposing party's former employee is Rule 4.2 of the Model Rules of Professional Conduct ("MRPC").[1] That Rule reads:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The purpose of the Rule is to preserve the efficacy and sanctity of the attorney-client relationship. Specifically, it is intended to prevent one party's attorney from exploiting the lack of legal knowledge of a momentarily uncounseled adverse party. *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258, 265 (D.N.J.1991); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 625 (S.D.N.Y.), *aff'd,* 1990 WL 180571, 1990 U.S. Dist. LEXIS 15382 (S.D.N.Y. Nov. 15, 1990). Clients retain counsel to overcome their lack of legal knowledge. Unrestricted *ex parte* contact might "neutralize the protection that the adverse party has sought to secure by employing an attorney." Stephen M. Sinaiko, Note, *Ex Parte Communication and the Corporate Adversary: A New Approach,* 66 N.Y.L.Rev. 1456, 1464 (1991) ("Sinaiko"). As noted in American Bar Association Formal Opinion 91–359:

> The purposes of the rule against ex parte communications with represented parties are "preserving the proper functioning of the legal system and shielding the adverse party from improper approaches."

ABA Formal Opinion 91–359 (quoting *Wright v. Group Health Hospital,* 103

---

1. "Federal law governs the conduct of attorneys in the federal courts. Generally, that law is embodied in the local rules of each court." *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 626 (S.D.N.Y.1990). The Local Rules of the United States District Court for the Eastern District of Michigan provide that the rules governing standards for professional conduct in this district shall be those which violate the Rules of Professional Conduct adopted by the Michigan Supreme Court. E.D.Mich. LR 111.1(d)(2). Thus, attorneys who practice before this Court are governed by the Michigan Rules of Professional Conduct.

The Michigan Rules of Professional Conduct were largely drawn from the American Bar Association Model Rules of Professional Conduct. *See* Comment, Rule 1.0, Michigan Rules of Professional Conduct. Apart from minor stylistic differences, Rule 4.2 of the ABA Rules and Rule 4.2 of the Michigan Rules are the same. For the purpose of this Opinion, the Court will treat the ABA Rules and the Michigan Rules as one.

Wash.2d 192, 691 P.2d 564, 576 (1984) (citing ABA Formal Opinion 108 (1934)).

Rule 4.2 does not directly address the propriety of contact between an attorney and a former employee of the opposing corporate party. However, in ABA Formal Opinion 91–359, issued March 1991, the American Bar Association Committee held that Rule 4.2 does not extend to former employees, including former managerial employees. After a comprehensive review of the justifications for and against the application of Rule 4.2 to former employees, the Committee said, in pertinent part:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employees, *the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended.* Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of the Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.
>
> *Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.*

ABA Formal Opinion 91–359 at 3 (emphasis added). The Committee thus based its ruling on the plain language of the Rule and its disinclination to restrain discovery.

Courts are split in their interpretation of Rule 4.2 as applied to former corporate employees. The majority of courts have held that Rule 4.2 does not apply to any former employee. *In re Domestic Air Transportation Antitrust Litigation,* 141 F.R.D. 556 (N.D.Ga.1992); *Shearson Lehman Brothers, Inc. v. Wasatch Bank,* 139 F.R.D. 412 (D.C.Utah 1991); *AAMCO Transmissions, Inc. v. Marino,* 1991 WL 193502 (E.D.Pa. September 24, 1991); *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899 (E.D.Pa.1991), appeal dismissed without opinion, 961 F.2d 207 (3d Cir.1992); *Hanntz v. Shiley, Inc., supra; Dubois v. Gradco Systems, Inc.,* 136 F.R.D. 341 (D.Conn.1991); *Polycast Technology Corp. v. Uniroyal, Inc., supra; Siguel v. Trustees of Tufts College,* 52 Fair Empl.Prac.Cas. (BNA) 697, 700, 1990 WL 29199 (D.Mass. March 12, 1990).[2]

The minority of courts have permitted communication with a former employee subject to certain conditions. *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991) (former employees may not be contacted if information provided would impute liability to former employer)[3]; *PPG Industries, Inc. v. BASF Corp.,* 134 F.R.D. 118, 121 (W.D.Pa.1990) (same); *Chancellor v. Boeing Co.,* 678 F.Supp. 250, 253 (D.Kan. 1988) (same); *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 39–41 (D.Mass.1987) (same); *Porter v. Arco Metals Co.,* 642 F.Supp. 1116, 1118 (D.Mont. 1986) (only former *non-managerial* employees may be contacted).[4]

The specific point of dispute between the majority and minority is one clause of the Comment to Rule 4.2. The Comment explains the scope of the Rule as applied to an organization. It provides, in relevant part:

**2.** The Court observes that every decision after the promulgation of the ABA's Formal Opinion in March 1991 has adopted the majority position.

**3.** This holding was criticized by another New Jersey district court in *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991).

**4.** One court, *Public Service Electric and Gas Co. v. Associated Electric & Gas Ins. Services, Ltd.,*

745 F.Supp. 1037 (D.N.J.1990) (*"PSE & G"*), held that Rule 4.2 prohibited all contact with *any* former employee. This decision, however, was not only issued prior to the March 1991 ABA Formal Opinion, it has not been followed by other courts and was expressly criticized by two other decisions out of the New Jersey District Court, *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991) and *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991).

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Comment, Rule 4.2.

Thus, pursuant to the Comment, two general classes of individuals may not be contacted *ex parte:*

1. Persons having managerial responsibility on behalf of the organization;

2. Any other person:

a. whose act or omission in connection with the matter may be imputed to the organization; or

b. whose statement may constitute an admission of the organization.

It is clear that a former employee is no longer a person *"having* managerial responsibility."* Nor is a former employee a person whose statement may constitute an admission in that such admission under Fed.R.Evid. 801(d)(2)(D) must be made during the existence of the employment relationship. *See* Fed.R.Evid. 801(d)(2)(D); 2 Hazard and Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 4.2:107, at 738 (2d ed. 1990).

Thus, courts that have examined this issue have focused on the "imputed to the organization" language of the Comment. Under its plain meaning, this language would seem to include all relevant employees, past or present. In other words, unlike the other two categories of employees mentioned in the Comment, the "imputed" category contains no temporal limitation. Those courts that have permitted the application of Rule 4.2 to former managerial employees have relied heavily on this portion of the Comment. *See e.g., Curley,* 134 F.R.D. at 81; *PPG Industries,* 134 F.R.D. at 121. In contrast, those courts that have refused to apply Rule 4.2 to former mana-

gerial employees have attempted to explain the import of the plain language of the Comment. Some such courts have attempted to do so by noting that including former employees would go against the policy or structure of the Rule. *See Hanntz,* 766 F.Supp. at 267 (would constrain discovery), 269 (must be read in tandem with admissions language); *Action Air,* 769 F.Supp. at 903 (same). Other courts have provided alternative examples of the meaning of the term "imputed" that they claim better comport with the intent of the drafters. *Polycast,* 129 F.R.D. at 627 (impute language refers to nonemployee agents of an organization as opposed to former employees); *DuBois,* 136 F.R.D. at 346 (same). Still other courts have simply relied on the ABA Formal Opinion which limits Rule 4.2 to current employees. *Shearson Lehman Bros.,* 139 F.R.D. at 417; *In re: Domestic Air Transportation Antitrust Litigation,* 141 F.R.D. 556, 564 (1992).

These explanations of the "imputed" language fail satisfactorily to explain why a former employee, whose act while an employee may well have been imputed to the organization, falls outside the scope of the plain language of the Comment.

The difficulty experienced by the above courts appears to be caused by the focus of their inquiry. That is, they focus on the language of the Comment without first construing the Rule upon which the Comment is based. The Court initially observes that the purpose of a comment is to explain a rule; a comment to a rule does not add to or in any way expand upon the rule; it is explicative of the rule. Therefore, although the Comment in this case explains the application of Rule 4.2 to a corporate party, it does not expand the scope of that rule.

The application of Rule 4.2 is specifically limited to a party. The Rule says that "a lawyer shall not communicate about the subject of the representation *with a party...."* Therefore, any analysis of the scope of Rule 4.2 must begin with a determination that the person to be approached by the attorney is indeed a party. If the

litigants are individuals, it is relatively simple to determine the identity of the parties. In the case of an organization, however, the determination of "party" is less obvious.

■ As a corporation is simply a group of persons, each member of a corporation is a potential party. Thus, the outer limit of the scope of "party" as applied to an organization comprises those persons connected to the organization as employees or agents of that organization. The Comment to Rule 4.2, however, does not define a corporate party as any agent or employee of that corporation. Rather, it limits the use of the term "party" to three specific types of agents: (1) managerial employees, (2) employees whose act in the matter can be imputed to the organization, and (3) employees whose admission at trial would be binding on the organization. All of the above categories of persons are agents; however, they are agents who have a specific connection either to the organization or to the matter in dispute.[5]

If one party is an organization, the first level of inquiry is whether the person in question is an agent of that organization. If he is not, then he cannot be a party because he lacks any relevant connection to the organization which could reasonably place him in the role of a party.[6] Only if a person is an agent of the organization need a court advance to the next level to determine whether that agent fits within the specific category of organizational agents to which Rule 4.2 is applicable.

The Court observes that the above analysis of Rule 4.2 does not in any way render meaningless the language of the Comment concerning an act or omission being imputed to the organization. Given the limited scope of the actual language of Rule 4.2, the likely interpretation of that portion of the Comment is that it refers to those nonmanagerial employees whose acts would, through *respondeat superior*, be attributed to the organization for purposes of liability. For example, a truck driver involved in an accident would most likely not be a managerial employee, and he may not be in a position in which his statement would constitute an admission of the organization. However, he would be a person whose act in connection with that matter could be imputed to the organization for civil or criminal liability. *See Polycast Technology Corp.*, 129 F.R.D. at 627 (quoting Hazard & Hodes, *supra* ).[7]

■ In the instant case, the Court is not aware of any rationale under which Ms. Baer could be considered to have an agency relationship with Samelson. There is no evidence in the record of a current connection to her former employer. Further, she is currently allied with Valassis and is thus, if anything, an adverse party. As she has no agency relationship with Samelson, Ms. Baer is not a party and is thus unaffected by Rule 4.2.[8]

■ Samelson's May 18, 1992 Supplemental Brief tacitly admits that Valassis may informally interview Ms. Baer in that it fails to challenge this aspect of the communication between Valassis's attorneys

---

**5.** Perhaps the drafters of the Rule feared that the application of Rule 4.2 to each and every corporate agent would unduly limit discovery of a corporate party. *See generally International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 42–44 (2d Cir.1975) (discussing bias in favor of free communication by attorney with adverse party's witness).

**6.** The Court observes that to be considered a corporate party under Fed.R.Evid. 801(d)(2)(D), a person must, at a minimum, be an "agent or servant" of the organization.

**7.** The Court emphasizes that the "admissions" language and the "imputed" language of the Comment are not redundant. The statement of

an employee witness, for example, may constitute an admission of the organization; however, that witness may not have committed an act or omission in connection with the matter in dispute. Similarly, a person whose act would be imputed to the organization may not be in a position to make a statement that would be considered an admission, *i.e.*, the matter in question is not within the scope of his agency.

**8.** Any organization desiring to prohibit its employees from engaging in *ex parte* communications on certain subjects after having ceased to work for that organization has the option of devising an · appropriate confidentiality agreement. Samelson neglected to devise a confidentiality agreement for Ms. Baer.

and Ms. Baer. However, Samelson focuses on Valassis's stated intent to use Ms. Baer to comb through a large number of documents supplied by Samelson. According to Samelson, this use of Ms. Baer is tantamount to recruiting her onto Valassis's litigation team. This, in turn, says Samelson, places her in the position of "expert."

Samelson then refers the Court to several decisions in which a court held that an expert who has exchanged confidential information with organization X may not later be hired by adversary organization Y. *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D.Va.1991); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588 (D.Minn.1986); *Conforti & Eisele, Inc. v. Division of Building & Construction*, 170 N.J.Super. 64, 405 A.2d 487 (1979).

Samelson ignores a crucial distinction between the experts in the above cases and Ms. Baer. The reason that the above experts were forbidden from working for an adversary organization was that they were in possession of privileged information. In fact, common sense suggests that a large portion of information communicated to an expert—who, after all, would be specifically hired to aid in litigation—would be privileged. As the court noted in *Marvin Lumber, supra:*

> Rather than the simple, unthinking performance of unrelated mechanistic tasks urged by defendant, the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of plaintiff's modus operandi, patterns of operation, decision-making process and the like.

*Marvin Lumber*, 113 F.R.D. at 591. *See also Wang Laboratories, Inc., supra* ("even if counsel reasonably assumed the existence of a confidential relationship, disqualification does not seem warranted where no privileged or confidential information passed"); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 279 (S.D.Ohio 1988) (noting that whether expert may be disqualified turns largely on whether attorney and expert exchanged privi-

leged information). It is understandable that having determined that an expert has received privileged information, a court would decide that a narrow protective order would not sufficiently protect that expert's former client.

However, a former employee like Ms. Baer, unlike an expert, possesses a plethora of information, only a portion of which may be privileged. A blanket proscription on contact between a former employee and an adverse party's attorney would be an unwarranted infringement on that employee's ability to communicate about her former employment. The goals of open discovery and attorney-client privilege can be much better addressed through the entry of a particularized protective order covering only privileged information.

### B. *Attorney–Client Privilege*

■ The attorney-client privilege prevents disclosure of certain information communicated between a client and his attorney. Its purpose is to encourage full and frank communication between attorneys and their clients. *Upjohn Co. v. United States*, 449 U.S. 383, 388–89, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). By invoking the privilege, a client may refuse to testify about (and may proscribe his attorney from testifying about) communications between him and his attorney. The privilege applies when the client is a corporation, *Id.*, 449 U.S. at 390–91, 101 S.Ct. at 683, and has been interpreted as preventing disclosure of privileged information by former employees. *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 n. 7 (9th Cir.1981), *cert. denied, California v. Standard Oil Co.*, 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982). Valassis does not challenge the potential application of the attorney-client privilege to Ms. Baer in this case.

■ In addition, Valassis's attorney would be prohibited by another ethical rule, Rule 4.4, from asking Ms. Baer to testify about or disclose in any way privileged information. Rule 4.4 provides:

> In representing a client, a lawyer shall not use means that have no substantial

purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

This rule has been interpreted as preventing an attorney from inquiring about privileged matters. ABA Formal Opinion 91–359; Hazard and Hodes, *The Law of Lawyering* at § 4.2:107, at 738.

■ Valassis admits that his attorneys may not question Ms. Baer on privileged matters. However, he notes, correctly, that the burden of demonstrating that particular information is indeed privileged rests with Samelson.[9] *Heathman v. United States Dist. Ct. For Cent. Dist. of Cal.,* 503 F.2d 1032, 1033 (9th Cir.1974). Should Samelson's attorney be able to establish a basis for the application of the attorney-client privilege to information in the possession of Ms. Baer, the Court will enter an appropriate protective order covering such information.[10]

## II. MISAPPROPRIATION OF TRADE SECRETS

■ In his Supplemental Brief, Samelson raises, at least partially in response to questions from the Court at oral argument, the issue of trade secrets. According to Samelson, if the Court permits Valassis's attorneys to contact Ms. Baer, "it will open the door to the commission of the tort of misappropriation of trade secrets."

Michigan courts have defined a trade secret as "a secret formula or process not patented but known only to certain individuals using it in compounding some article of trade having a commercial value, and does not denote the mere privacy with which an ordinary commercial business is carried on." *Hayes–Albion v. Kuberski,* 421 Mich. 170, 364 N.W.2d 609, 614 (1984) (quoting *Glucol Mfg. Co. v. Schulist,* 239 Mich. 70, 214 N.W. 152 (1927)).

Samelson has failed to present any evidence that Ms. Baer was privy to a trade secret, as defined above, which would give rise to a common law duty of nondisclosure and which would be relevant to her proposed assistance to Valassis in this matter. In his affidavit, Samelson sets forth information which is presumably intended to support a claim that Ms. Baer is privy to trade secrets:

11. While an employee of SDC, Ms. Baer was privy to numerous sensitive and confidential conferences, meetings, documents, and other communications between officers, directors, executives, and managers of SDC and its attorneys. She also had access to confidential documents and other secret and confidential communications between SDC and its attorneys. Those communications and documents were intended to be kept secret and confidential both by SDC and its attorneys. To the best of my knowledge, those communications and documents have, in fact, been kept secret and confidential by SDC employees and its attorneys.

12. The confidences and secrets that Ms. Baer was privy to relate directly to the claims and defenses raised by the parties in the above-entitled action and in *North Hills.* Those confidences and secrets, include, but are not limited to:

a. The financial status of Samelson Development Company;

---

**9.** The Court cautions Samelson that the range of information privileged by the attorney-client relationship is far from limitless. As stated by the Supreme Court in *Upjohn:*

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>
> The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn v. United States,* 449 U.S. 383, 395–96, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981) (quoting *Philadelphia v. Westinghouse Electric Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962)).

**10.** Indeed, in its May 8, 1992 letter, counsel for Valassis offered to negotiate a protective order to cover that material for which Samelson was able to articulate a basis for the existence of an attorney-client privilege.

b. Personal financial matters;

c. The financial status of Samelson Construction Company; and

d. The financial status of the general partners and the parties' partnerships.

Some of this information might be excludable under the attorney-client privilege. *See infra.* However, none of it fits within the definition of trade secret supplied by the Michigan Supreme Court. For this reason, the Court rejects Samelson's attempt to characterize the information which may be supplied by Ms. Baer as trade secrets.

■ Further, even were this information considered trade secrets, Samelson would not necessarily be able to prevent its divulgence to Valassis. Where information sought in discovery is relevant to the issues involved in the litigation, discovery will not be denied merely because trade secrets of the opposing party will be disclosed. *United States v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir.), *cert. denied*, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969).

Finally, even were trade secrets disclosed to Valassis, the Stipulated Protective Order would ensure that such information was not disseminated beyond the limited scope of those persons set forth in that order.

## CONCLUSION

Ms. Baer may speak informally with the attorneys for Valassis and may aid them in reviewing the documents supplied by Samelson during discovery. As a former employee, she is no longer a party of Samelson and consequently does not fall under the rubric of Rule 4.2. However, Ms. Baer is proscribed from communicating to Valassis's attorneys any information that is protected by the attorney-client privilege. Similarly, Valassis's attorneys are forbidden from asking about this privileged information.

Moreover, as Samelson has submitted no evidence that Ms. Baer possesses trade secrets, there is no reason to believe that she will be in a position to commit the tort of misappropriation of trade secrets.

NOW, THEREFORE;

IT IS HEREBY ORDERED that Plaintiff's Motion for Permission to Use and Interview Mary Baer be GRANTED and Defendant's Motion for Protective Order be DENIED.