FU INVESTMENT CO., LTD., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

COCO PALMS INVESTMENT, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12983–94, 12984–94.          Filed April 3, 1995.

*Paul J. Sax, Lisa A. Wilcox,* and *William L. Riley,* for petitioners.

*Bryce A. Kranzthor, Debra K. Estrem,* and *Jordan Musen,* for respondent.

## OPINION

DAWSON, *Judge:* These consolidated cases were assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.[1] The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below.

### OPINION OF THE CHIEF SPECIAL TRIAL JUDGE

PANUTHOS, *Chief Special Trial Judge:* This matter is before the Court on petitioners' separate motions for protective order filed December 12, 1994. Petitioners each seek a protective order from the Court precluding respondent from engaging in ex parte communications with petitioners' former employees.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Respondent determined that petitioners Fu Investment Co., Ltd., and Coco Palms Investment, Inc., are liable for withholding of income tax at source as follows:

| *Fu Investment Co., Ltd.* | | *Coco Palms Investment, Inc.* | |
|---|---|---|---|
| *Year* | *Amount* | *Year* | *Amount* |
| 1990 | $1,287,375 | 1990 | $483,272 |
| 1991 | 635,642 | 1991 | 238,865 |

Petitioners, whose principal place of business was in California, invoked the jurisdiction of this Court by filing separate petitions for redetermination.

After filing an answer to each of the petitions, respondent mailed letters to three of petitioners' former employees (a former secretary and two accounting supervisors) requesting interviews regarding the matters in dispute in these cases. After being notified of respondent's intentions by one of the former employees, petitioners filed the motions for protective order pending before the Court. Specifically, petitioners request that we preclude respondent from engaging in ex parte contacts with their former employees. Petitioners' counsel requests reasonable advance notice of the name of the former employee, the time and place for the interview, and an opportunity to be present at the interview for the purpose of objecting to questions that might elicit privileged information.

Respondent filed objections to petitioners' motions, indicating therein that she would suspend her efforts to interview the individuals in question pending the disposition of petitioners' motions.

Petitioners' motions were calendared for hearing in Washington, D.C. Counsel for respondent appeared at the hearing and presented argument in opposition to the motions. Petitioners filed statements with the Court pursuant to Rule 50(c) in lieu of attending the hearing. Petitioners' Rule 50(c) statements include declarations submitted by James Murad, a partner with Cooper, White & Cooper, petitioners' general counsel, stating that, while employed by petitioners, each of the former employees in question was

privy to confidential attorney-client communications regarding the substantive issues in dispute in these cases.

During the hearing of this matter, counsel for respondent argued that respondent is not obligated to provide advance notice of her intention to interview petitioners' former employees. Counsel for respondent also assured the Court that respondent would attempt to avoid eliciting privileged information from the former employees and, further, would provide petitioners with copies of any notes taken during the interviews.

There is no indication in the record that petitioners' former employees are presently represented by counsel.

*Discussion*

Petitioners' motions for protective order raise the issue of whether respondent may engage in ex parte communications with the former employees of a taxpayer after the taxpayer has filed a petition for redetermination with this Court. In addition, we must address petitioners' concerns that the former employees in question may disclose matters to respondent that are subject to the attorney-client privilege.

Rule 103 provides that, upon motion by a party or any other affected person, and for good cause shown, the Court may make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense. We have previously considered the question of the Court's authority to issue a protective order under Rule 103 restricting the use of information obtained through legal procedures that fall outside of the Court's formal discovery procedures. See *Ash v. Commissioner*, 96 T.C. 459, 469–470 (1991) (interpreting Rule 103 consistently with Fed. R. Civ. P. 26(c), from which the former is derived). Arguably, respondent's efforts to arrange informal witness interviews do not fall within our discovery procedures, and, thus, are not subject to restriction under Rule 103. See *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 38 (D. Mass. 1987) (interpreting Fed. R. Civ. P. 26(c)).

Nonetheless, it is well settled that courts have inherent powers not derived from any statute to, inter alia, control the conduct of attorneys practicing before them and to regulate

their own processes to prevent injustice. See *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765 (1980); *Ash v. Commissioner, supra* at 470; *Amarin Plastics, Inc. v. Maryland Cup Corp., supra* at 38–39; see also Rule 1(a). With these principles in mind, we first turn to the question of whether respondent may engage in ex parte communications with petitioners' former employees.

Rule 201(a) provides that practitioners before the Court shall carry on their practice in accordance with the letter and spirit of the Model Rules of Professional Conduct of the American Bar Association. *Duffey v. Commissioner,* 91 T.C. 81, 82 (1988). Model Rules of Professional Conduct rule 4.2 (1992) (hereinafter model rule 4.2) states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

In short, model rule 4.2 prohibits ex parte communications with a party that the lawyer knows to be represented by another attorney in the matter.

The official comment to model rule 4.2 states in pertinent part:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

[Model Rule of Professional Conduct 4.2 cmt. (1992).]

Model rule 4.2 advances the well recognized public policy favoring the preservation and protection of the attorney-client relationship. Specifically, by prohibiting ex parte communications with a party represented by counsel, opposing counsel is: (1) Denied the unfair advantage that he would otherwise enjoy over a lay person unfamiliar with the law and (2)

precluded from disturbing an established attorney-client relationship. *Cram v. Lamson & Sessions Co.,* 148 F.R.D. 259, 260 (S.D. Iowa 1993); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 625 (S.D.N.Y. 1990) (interpreting Code of Professional Responsibility, disciplinary rule 7–104(A)(1)).

Consistent with its official comment, model rule 4.2 generally has been interpreted to preclude opposing counsel from engaging in ex parte communications with the *present* employees of a corporate party. See, e.g., *Miano v. AC&R Advertising, Inc.,* 148 F.R.D. 68, 76–77 (S.D.N.Y. 1993). As indicated, however, we are asked to decide, in a case of first impression in this Court, whether respondent may engage in ex parte communications with the *former* employees of a corporation/petitioner. The issue to be decided has been addressed by the American Bar Association (ABA) and a substantial number of Federal District Courts.

We begin our review of these authorities with ABA Standing Comm. on Ethics and Professional Responsibility, formal op. 91–359 (1991). Focusing on the express language of model rule 4.2 and the rule's official comment, the ABA takes the view that the rule should not be interpreted to prohibit ex parte contacts with former employees. Formal op. 91–359 states in pertinent part:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers [sic], the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

Consistent with ABA formal op. 91–359, the majority of jurisdictions considering the issue have held that model rule 4.2 generally does not apply to preclude an attorney from engaging in ex parte contacts with the former employees of a corporate party. See *Cram v. Lamson & Sessions Co., supra* at 263–265; *Brown v. St. Joseph County,* 148 F.R.D. 246, 251–253 (N.D. Ind. 1993); *Valassis v. Samelson,* 143 F.R.D. 118, 121–123 (E.D. Mich. 1992); *Dubois v. Gradco Systems, Inc.,* 136 F.R.D. 341, 343–346 (D. Conn. 1991); *Hanntz v. Shiley, Inc.,* 766 F. Supp. 258, 263 (D.N.J. 1991); *Action Air*

*Freight, Inc. v. Pilot Air Freight Corp.,* 769 F. Supp. 899, 902–904 (E.D. Pa. 1991); *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. 412, 417 (D. Utah 1991); *Polycast Technology Corp. v. Uniroyal, Inc., supra* at 628; *Monsanto Co. v. Aetna Casualty & Surety Co.,* 593 A.2d 1013, 1016 (Del. Super. Ct. 1990); see also 2 Hazard & Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct, sec. 4.2:107, at 739 (2d ed., 1994 supp.). But cf. *Porter v. Arco Metals Co.,* 642 F. Supp. 1116, 1118 (D. Mont. 1986) (suggesting that model rule 4.2 may preclude ex parte contacts with former employees who exercised managerial responsibilities with respect to the matters in litigation).

The courts adopting the majority view as described above have determined that the specific policy considerations underlying model rule 4.2 have marginal relevance in the case of a communication between an attorney and former employee of a corporate party. In *Cram v. Lamson & Sessions Co., supra* at 260, the court stated:

Because the former employee no longer works on the organization's behalf, the former employee will not be a party to settlement negotiations. *Polycast,* 129 F.R.D. at 625; see *Hanntz,* 766 F.Supp. at 265; *Goff,* 145 F.R.D. at 354. Furthermore, an attorney-client relationship between former employee and the employer's attorney is unlikely. Accordingly, the risk of jeopardizing an attorney-client relationship is substantially diminished. *Polycast,* 129 F.R.D. at 625; see *Hanntz,* 766 F.Supp. at 265. * * *

We find the majority view described above to be consistent with the literal terms of model rule 4.2, as well as the official comment to the rule. In the first instance, absent extraordinary circumstances, the former employees of an organization such as a corporation are not considered a "party" to corporate matters as that term is used in model rule 4.2. *Valassis v. Samelson, supra* at 122–123. In addition, former employees, by definition, no longer possess managerial responsibilities on behalf of the organization, and their statements do not constitute an admission on the part of the organization. *Id.; Hanntz v. Shiley, Inc., supra* at 266–267; see Fed. R. Evid. 801(d)(2)(D). Further, we are persuaded by, and agree with, the analysis set forth in *Polycast Technology Corp. v. Uniroyal, Inc., supra* at 626–627, supporting that court's conclusion that former employees do not fall within the class of "any other person" whose act or omission may be

imputed to the organization for purposes of civil or criminal liability.[2] But cf. *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. at 40.

In sum, we find the reasoning of the line of cases including *Cram v. Lamson & Sessions Co., supra,* and *Polycast Technology Corp. v. Uniroyal, Inc., supra,* to be persuasive. In the absence of any indication in the record that petitioners' former employees are represented by counsel, we hold that model rule 4.2 does not preclude respondent from engaging in ex parte communications with those former employees. Moreover, we observe that the interviews that respondent proposes to conduct are not inconsistent with this Court's approach to pretrial case preparation.

Model rule 4.2 aside, petitioners assert, in a very general fashion, that the former employees in question were, during their employment with petitioners, in frequent contact with petitioners' counsel regarding the substantive matters in dispute in this case. Thus, petitioners maintain that we should issue a protective order allowing petitioners' counsel to be present at any proposed interview and to object to any question that may elicit information that is subject to the attorney-client privilege.

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *Hartz Mountain Indus., Inc. v. Commissioner,* 93 T.C. 521, 524–525 (1989). The Supreme Court ruled that the attorney-client privilege applies when the client is a corporation, summarizing the purpose of the privilege as follows:

Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. [*Upjohn Co. v. United States, supra* at 389.]

In discussing the scope of the attorney-client privilege, the Supreme Court indicated that although the privilege protects

---

[2] In *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 627 (S.D.N.Y. 1990), the court concluded that the language "any other person" in the official comment to Model Rule of Professional Conduct 4.2 was probably intended to refer to the agents of an organization whose acts might be attributable to the organization but who technically might not be considered employees.

"not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice," *id.* at 390, "the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney", *id.* at 395; see *Hanntz v. Shiley, Inc., supra* at 270–271.

Section 7453 provides that the Tax Court is bound by the rules of evidence applicable in trials without a jury in the U.S. District Court for the District of Columbia. Rule 143(a); *Von Tersch v. Commissioner,* 47 T.C. 415, 418–419 (1967). The U.S. District Court for the District of Columbia generally takes the view that all privileges are to be strictly construed. See, e.g., *United States v. American Tel. & Tel. Co.,* 86 F.R.D. 603, 604 (D.D.C. 1979).

The attorney-client privilege existing between a corporate client and its attorneys has been held to extend to both present and former corporate employees. See *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation,* 658 F.2d 1355, 1361 n.7 (9th Cir. 1981); see also *Dubois v. Gradco Systems, Inc., supra* at 346–347; *Porter v. Arco Metals Co., supra* at 1118; *Amarin Plastics, Inc. v. Maryland Cup Corp., supra* at 41; 2 Hazard & Hodes, *supra* sec. 4.2:107, at 739. The burden of proving that the attorney-client privilege applies rests with the party asserting the privilege. *United States v. American Tel. & Tel. Co., supra* at 604–605; *Hartz Mountain Indus., Inc. v. Commissioner, supra* at 525.

While we hold that respondent may engage in ex parte communications with petitioners' former employees without violating the proscriptions of model rule 4.2, we recognize that circumstances may arise where certain precautions (including a narrowly drawn protective order) may be warranted to ensure that such ex parte contacts are not simply a forum for counsel to seek information protected by the attorney-client privilege. Based on the record presented, however, we have no basis for concluding that we should impose specific restrictions on respondent at this time. In short, petitioners' general assertions that the former employees in question were privy to privileged communications are insufficient to allow the Court to issue a meaningful protective order. See *Cram v. Lamson & Sessions Co.,* 148 F.R.D. at

266; *Valassis v. Samelson,* 143 F.R.D. at 125. Absent more specific information regarding the alleged privileged communications, we conclude that petitioners have failed to satisfy their burden of proof justifying a protective order.

Nonetheless, respondent is reminded that the proposed interviews must be conducted within the letter and spirit of the Model Rules of Professional Conduct. Rule 201(a). Of course, nothing we have said herein precludes petitioners' former employees from having counsel (including petitioners' counsel) accompany them to any such interview. In addition, prior to conducting an interview of this nature, respondent must advise each former employee that respondent and petitioners are adverse parties in this proceeding. The agent or attorney conducting the interview likewise must explain his role in the information-gathering process. See model rule 4.3.[3]

Equally important, during the course of such an interview respondent must limit her questions to factual matters and refrain from eliciting or inducing statements or disclosures by a former employee that involve privileged communications.[4] See Model Rule of Professional Conduct 4.4 (1992) (a lawyer may not use methods of obtaining evidence that violate the legal rights of a third person); see also *Valassis v. Samelson, supra* at 124–125; *Hanntz v. Shiley, Inc., supra* at 270–271; *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. at 417–418.

Finally, we expect that respondent will honor the representation made to the Court during the hearing of this matter

---

[3] Model Rule of Professional Conduct 4.3 (1992) states:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

[4] See ABA Standing Comm. on Ethics and Professional Responsibility, formal op. 91–359 (1991), discussed above.

that she will provide petitioners with copies of any notes taken during the proposed interviews.

To reflect the foregoing,

> *Orders denying petitioners' motions for protective order will be issued.*