**INFOSYSTEMS, INC., Plaintiff/Counter–Defendant,**

v.

**CERIDIAN CORPORATION and Robert Donahue, Defendants,**

and

**Sarla Software, L.L.C., Defendant/Counter–Plaintiff,**

v.

**Pranav Desai, Narendra Madurkar, and Shri Pattabhi, Counter–Defendants.**

No. 00–71147.

United States District Court, E.D. Michigan, Southern Division.

Nov. 17, 2000.

Lawrence V. Stawiarski, Farmington Hills, for plaintiff.

Daniel J. Bernard, Bingham Farms, Thomas S. Bishoff, Detroit, for defendant.

## OPINION AND ORDER REGARDING VARIOUS PENDING MOTIONS

ROSEN, District Judge.

Several motions presently are pending before the Court in this matter, including: (1) Defendant Sarla Software's November 3, 2000 emergency motion for a seven-day extension of time; (2) Defendant Sarla's November 3, 2000 emergency motion to quash subpoena and for protective order; (3) Plaintiff Infosystems' November 2, 2000 motion to compel; and (4) Counter–Defendant Narendra Madurkar's August 3, 2000 motion for sanctions and dismissal. This Opinion and Order sets forth the Court's rulings on these motions and related matters.

### I. Defendant Sarla's Motion for Seven–Day Extension of Time

On November 3, 2000, Defendant Sarla Software filed an emergency motion seeking an additional seven days in which to respond to certain outstanding discovery requests. In this motion, Sarla indicates that opposing counsel have concurred in this request. Accordingly, the seven-day extension sought by Sarla is granted.

### II. Defendant Sarla's Motion to Quash Subpoena and for Protective Order

Also on November 3, 2000, Defendant Sarla filed another emergency motion, this time regarding the deposition of a non-party witness, Jay Raghvandaran, that had been set for that very same day. This motion rests in part on the invalidity of the initial subpoena served on Mr. Raghvandaran, which was issued from this District despite the witness' presence in Georgia. Although this defect apparently was cured the day before the scheduled deposition, the Court nevertheless informed the parties orally, and the parties agreed, that the deposition should be rescheduled for a later date, both to afford reasonable notice and to accommodate the scheduling constraints expressed by the witness. The Court understands that the deposition was rescheduled, and has now gone forward.

Sarla also objects to certain aspects of the subpoena served upon Mr. Raghvandaran. Specifically, the subpoena commands him to produce: (1) any communications with Sarla's counsel; (2) any affidavits or draft affidavits prepared by or for him in connection with this matter;[1] and (3) any communications with Sarla's attorneys or employees regarding these affidavits and draft affidavits. Sarla contends that, by virtue of Mr. Raghvandaran's status as a former Sarla employee, his communications with Sarla's counsel are protected by the attorney/client privilege. In addition, Sarla argues that any affidavits or draft affidavits, as well as any related communications, are shielded from discovery under the work-product rule, at least until Sarla elects to file such an affidavit.

The Court cannot agree. First, regarding the attorney/client privilege, Sarla points to the decision in *Peralta v. Cendant Corp.*, 190 F.R.D. 38 (D.Conn.1999), as support for its position.[2] *Peralta* holds that the

---

1. Actually, the subpoena refers more broadly to any affidavits or draft affidavits, without requiring that they bear any relation to the present matter. The Court assumes, however, that the request is limited to affidavits prepared in connection with this suit.

2. It should be noted that, in this case brought under the Court's diversity jurisdiction and featuring only state-law claims, Michigan law governs the scope of the attorney/client privilege. *See* Fed.R.Evid. 501. However, neither the parties nor the Court's own research has uncovered

privilege may extend to communications between corporate counsel and a former employee, where these communications either (i) concern knowledge obtained or conduct occurring during the course of the former employee's employment with the corporation, or (ii) relate to communications which themselves were privileged and which occurred during the employment relationship. As to the latter of these two points, this Court recognizes that privileged communications between an employee and corporate counsel should not automatically lose their protected status upon the employee leaving the company. However, this principle is unavailing to Sarla here, as there is no claim that the materials sought in the subpoena threaten to disclose privileged communications which occurred while Raghvandaran was employed at Sarla.

As for any communications between Raghvandaran and Sarla's counsel regarding Raghvandaran's activities or knowledge acquired during his employment with Sarla, the Court finds that the ruling in *Peralta* sweeps too broadly. In holding that such communications are privileged, *Peralta* looks primarily to the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Although the Supreme Court expressly declined to address communications with former employees, *see Upjohn*, 449 U.S. at 394 n. 3, 101 S.Ct. at 685 n. 3, some courts, including the District Court in *Peralta*, have reasoned that *Upjohn's* analysis readily extends to such communications. In particular, the *Upjohn* Court noted that corporate counsel often must gather information from mid- or lower-level employees in order to provide meaningful advice to the client corporation. *See Upjohn*, 449 U.S. at 391–92, 101 S.Ct. at 683–84. The Court then found that the "control group" test applied by the court below, under which only communications with senior management were protected, would unduly impede this gathering of information by corporate counsel, and thereby undermine the efficacy of counsel's advice to the corporation. *See Upjohn*, 449 U.S. at 392, 101 S.Ct. at 684. Plainly, and as observed in *Peralta*,

this information gathering function would be even further enhanced if the attorney/client privilege were extended to former employees. *See Peralta*, 190 F.R.D. at 39–40.

Yet, a close reading of *Upjohn* fails to support this extension. The Court was careful to note that the communications at issue in that case were "made by Upjohn employees to counsel for Upjohn acting as such, *at the direction of corporate superiors* in order to secure legal advice from counsel." *Upjohn*, 449 U.S. at 394, 101 S.Ct. at 685 (emphasis added) (footnote omitted). Even Justice Burger's concurrence, arguing that the privilege should extend to former employees, asserts that the privilege should attach where "an employee or former employee speaks *at the direction of the management* with an attorney regarding conduct or proposed conduct within the scope of employment." *Upjohn*, 449 U.S. at 403, 101 S.Ct. at 689 (Burger, C.J., concurring in part). The Court in *Peralta* acknowledged this important aspect of the ruling in *Upjohn*, and recognized that "wholesale application of the *Upjohn* principles to former employees as if they were no different than current employees is not justified by the underlying reasoning of *Upjohn*." *Peralta*, 190 F.R.D. at 40.

*Peralta's* ultimate ruling, however, omits this "direction of management" element of the *Upjohn* decision. Absent this element, this Court shares the concern expressed in another case cited by *Peralta*:

> Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employer to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit.

*Clark Equip. Co. v. Lift Parts Mfg. Co.*, 1985 WL 2917, at *5 (N.D.Ill. Oct.1, 1985).

a Michigan court decision considering whether the attorney/client privilege reaches communica-

tions between corporate counsel and a former employee of the corporation.

■ The Court concurs in this reasoning, and concludes that counsel's communications with a former employee of the client corporation generally should be treated no differently from communications with any other third-party fact witness. Admittedly, there are exceptions to this general rule. As noted earlier, privileged communications which occur during the period of employment do not lose their protection when the employee leaves the client corporation. *See Valassis v. Samelson,* 143 F.R.D. 118, 124 (E.D.Mich. 1992); *Peralta,* 190 F.R.D. at 41. Moreover, there may be situations where the former employee retains a present connection or agency relationship with the client corporation, or where the present-day communication concerns a confidential matter that was uniquely within the knowledge of the former employee when he worked for the client corporation, such that counsel's communications with this former employee must be cloaked with the privilege in order for meaningful fact-gathering to occur. *See Valassis,* 143 F.R.D. at 123; *Peralta,* 190 F.R.D. at 40; *City of New York v. Coastal Oil New York, Inc.,* 2000 WL 145748, at *2 (S.D.N.Y. Feb.8, 2000). In any event, the "protection of the privilege extends only to *communications* and not to facts." *Upjohn,* 449 U.S. at 395, 101 S.Ct. 677 (internal quotations and citation omitted); *see also Valassis,* 143 F.R.D. at 125 n. 9.

■ As the party seeking to invoke the attorney/client privilege, it is Sarla's burden to show that its counsel's communications with Raghvandaran differed in some relevant way from counsel's communications with any other third-party witness. *See Valassis,* 143 F.R.D. at 125. Sarla has not made such a showing, and has not submitted the subpoenaed materials at issue for an *in camera* review. Instead, Sarla rests its claim of privilege on the broad assertion that counsel's recent communications with Raghvandaran in advance of his deposition concerned "the witness's conduct and knowledge during his employment with Sarla." While *Peralta* appears to suggest that this claim alone is sufficient to invoke the attorney/client privilege, this Court declines to grant such sweeping protection to all attorney communications with former employees of the client corporation. Rather, the Court finds that Sarla has failed to satisfy its burden of establishing that the materials called for in the subpoena contain privileged attorney/client communications.

■ Similarly, Sarla has not made a sufficient showing that these materials are protected work product. Once Plaintiff has shown that the materials in question are relevant or otherwise discoverable—a point not squarely addressed by the parties, but apparently not disputed—the burden shifts to Sarla to show that the materials are encompassed within the work-product rule. *See Toledo Edison Co. v. G A Technologies, Inc.,* 847 F.2d 335, 339 (6th Cir.1988). It is well settled that the work-product doctrine protects only those materials prepared by or for a party or its representative. *See* Fed. R.Civ.P. 26(b)(3); *Upjohn,* 449 U.S. at 397–99, 101 S.Ct. at 686–87. Moreover, the work-product doctrine, like the attorney/client privilege, does not protect underlying facts from disclosure. *See Suggs v. Whitaker,* 152 F.R.D. 501, 507 (M.D.N.C.1993).

■ The materials at issue here are Mr. Raghvandaran's affidavit, prior drafts of this affidavit, and communications concerning this affidavit. Because the facts set forth in the affidavits are not protected, Plaintiff is free to question Raghvandaran at his deposition regarding the statements contained in these affidavits.[3] More fundamentally, the Court questions whether the affidavits themselves are true attorney work product, as Sarla suggests. An affidavit, after all, purports to be a statement of facts within the personal knowledge of the *witness,* and not an expression of the opinion of counsel. Although

---

**3.** Indeed, if Ragvandaran were unable to recall at his deposition the matters set forth in the affidavits, this seemingly would provide a basis for overcoming any claim of work-product protection with respect to those materials, as this memory lapse would satisfy the requirement under Fed.R.Civ.P. 26(b)(3) that a party be "unable without undue hardship to obtain the substantial equivalent of the materials by other means." *See Suggs,* 152 F.R.D. at 507; *Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Products, Inc.,* 140 F.R.D. 373, 378–79 (E.D.Wis. 1991).

there is little precedent squarely on point, one court has noted the risk of treating draft affidavits as protected work product:

> Granted, [the plaintiff] secured these statements [of third-party witnesses] in anticipation of litigation. However, if it now suggests that it may interpose the work product doctrine because it then put words in the mouths of those third-party affiants as part of its litigation strategy, it misperceives the nature of the doctrine. [The defendant] seeks no more than factual statements of these non-party witnesses. It should not be frustrated in its ability to test the perception and credibility of these persons.

*Milwaukee Concrete Studios*, 140 F.R.D. at 379. The Court finds this reasoning persuasive, and shares this reluctance to grant work-product protection to affidavits.

Sarla emphasizes, however, that it has not yet decided whether to file Raghvandaran's affidavit with the Court, and it argues that it should not be compelled to produce the affidavit unless and until it elects to do so. Plainly, upon making evidentiary use of the affidavit, Sarla would waive any claim of work-product protection. *See United States v. Nobles*, 422 U.S. 225, 239–40, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975).[4] Yet, as explained above, to delay disclosure until some unspecified future date of Sarla's choosing would defeat Plaintiff's "ability to test the perception and credibility" of Raghvandaran at his deposition. *Milwaukee Concrete Studios*, 140 F.R.D. at 379. The Court is unwilling to sanction any such "trial by ambush" strategy, particularly where Sarla has failed to identify any specific facts or circumstances that might give rise to the concern that production of the affidavits would reveal the mental impressions of its counsel.[5]

Accordingly, the Court finds that Sarla has not met its burden of showing that the chal-

lenged materials sought in the subpoena of Mr. Raghvandaran are encompassed by the attorney/client privilege or work-product doctrine. These materials, therefore, must be produced in connection with Mr. Raghvandaran's deposition.

### III. Plaintiff Infosystems' Motion to Compel Discovery

On November 2, 2000, Plaintiff Infosystems filed a motion to compel Defendant Ceridian to provide responses to certain discovery requests. Counsel for Plaintiff recently advised the Court that these responses have now been provided, albeit with certain objections. Accordingly, Plaintiff's motion has been withdrawn without prejudice.

### IV. Counter–Defendant Narendra Madurkar's Motion for Sanctions and Dismissal

By motion filed on August 3, 2000, Counter–Defendant Narendra Madurkar seeks the dismissal of Defendant/Counter–Plaintiff Sarla Software's complaint against him or, in the alternative, an order striking Madurkar's deposition testimony and imposing $10,000 in sanctions on Sarla and its counsel. As the basis for this motion, Madurkar argues that Sarla violated Fed.R.Civ.P. 26(d) and (f) by taking his deposition as a purported non-party witness while, on the same day and unbeknownst to him, Sarla was filing a complaint naming him as a counter-defendant.

Rule 26(f) requires that the parties "meet to discuss the nature and basis of their claims and defenses ... and to develop a proposed discovery plan." Rule 26(d), in turn, provides that parties generally "may not seek discovery from any source before the parties have met and conferred as required by subdivision (f)." In this case, there is no question that Counter–Plaintiff

---

4. Indeed, it could be argued that Sarla already has waived any such protection by sharing the affidavits with a third party, Mr. Ragvandaran. Again, this distinguishes affidavits, which necessarily must be shared with the affiant, from counsel's notes of a witness interview, which typically are not disclosed, and which are accorded full work-product protection.

5. Again, it is worth noting that Sarla has neither produced the affidavits for an *in camera* review, nor provided any sort of privilege log disclosing the general subject matter of the affidavits and specifying the basis for its claim of work-product protection.

Sarla did not meet and confer with the Counter–Defendants, including Madurkar, before it issued a subpoena commanding Madurkar to appear for a deposition on June 30, 2000. Likewise, no such meeting occurred before Madurkar actually appeared at his deposition on June 30. Indeed, as his deposition commenced on June 30, Madurkar could not possibly have been aware of any need to meet and confer with Sarla pursuant to Rule 26(f), as he was not yet a party to this action, at least to his knowledge.[6] Madurkar argues that Sarla's failure to comply with this "meet and confer" requirement prior to his deposition warrants the dismissal of Sarla's complaint against him, or at least some form of sanction.

The Court cannot agree. First, by its express language, Rule 26(d) requires that parties must meet and confer before commencing discovery, "[e]xcept when authorized under these rules or by local rule, *order*, or agreement of the parties." Fed. R.Civ.P. 26(d) (emphasis added). As noted by Sarla, this Court issued such an order, instructing counsel in its June 13, 2000 Notice of Scheduling Conference that they should "commence significant discovery prior to the conference." While this instruction was not binding upon Madurkar, who was not yet a party, it was reasonable for Sarla to view the Court's June 13 notice as dictating that discovery should proceed irrespective of the parties' scheduling of a Rule 26(f) conference.[7]

◾ Next, it is far from clear that Rule 26(f) and (d) require an *additional* conference and discovery plan each time a new party is named in an action. None of the cases cited in Madurkar's motion addresses the question presented here—namely, whether a third-party plaintiff in an ongoing proceeding, with the existing parties already engaged in discovery, must separately meet and confer with a third-party defendant before seeking discovery from this newly-added party. Likewise, the Court's own research has revealed nothing definitive on this question. Rather, the available authorities indicate that an additional Rule 26(f) conference is not required, but at most is a matter of the parties' and Court's discretion. *See Steppes Apartment, Ltd. v. Armstrong*, 188 F.R.D. 642, 644 (D.Utah 1999); *see also* Fed. R.Civ.P. 26(f), advisory committee note, 1993 amendments ("If more parties are joined or appear after the initial [Rule 26(f) ] meeting, an additional meeting may be desirable."). The Court in *Steppes Apartment* reasoned that the Federal Rules "do not contemplate sequential and periodic Rule 26(f) and Rule 16 proceedings before discovery may be commenced." 188 F.R.D. at 644.

Consequently, this Court is unable to identify any plain violation of the Federal Rules by Sarla that might warrant the dismissal or sanctions sought by Madurkar. Nor has Madurkar identified any specific prejudice he suffered as a result of Sarla's failure to inform him, prior to taking his deposition, that he was about to be named as a party. He was represented by counsel, and, in fact, this same counsel continues to represent him as a party. During Madurkar's deposition, his attorney vigorously represented his interests, lodging a number of objections. Moreover, when Plaintiff's and Madurkar's counsel learned at a lunch break that a counterclaim had been filed, and that Madurkar now was a party, they immediately terminated the deposition, after Madurkar had been deposed for less than three hours.

However, while no prejudice has yet been demonstrated, the Court does not intend to foreclose the possibility that Madurkar might

---

**6.** Unbeknownst to Madurkar, as Sarla's counsel conducted his deposition on June 30, Sarla's co-counsel simultaneously was filing a counterclaim against Plaintiff/Counter–Defendant Infosystems and various individuals, including Madurkar.

**7.** It also is worth noting that, according to the Court's docket, the parties never have prepared and filed a discovery plan as called for under Fed.R.Civ.P. 26(f) and Local Rule 26.2(a) of this District. Again, this cannot be viewed as a "waiver" of this Rule's protections by Madurkar, so long as he was not yet a party. Nevertheless, this reflects the parties' shared view, as confirmed by the Court's instruction in its June 13 notice, that discovery should not await the parties' compliance with Rule 26(f). Moreover, in this Court's experience, it is not uncommon—indeed, it might be characterized as the general rule, and not the exception—for parties to fail to strictly adhere to the dictates of Rule 26(f) and Local Rule 26.2(a).

interpose a legitimate objection to the evidentiary use of his deposition testimony in a subsequent proceeding. For example, Fed. R.Civ.P. 32(a) distinguishes between parties and non-parties in providing for the use of depositions in judicial proceedings. If Sarla seeks to introduce Madurkar's deposition testimony into evidence in support of its counterclaim against him, the Court will entertain and carefully consider any challenges Madurkar might raise concerning the proper designation of this testimony as that of a party or non-party.

Finally, the Court cannot leave this matter without expressing its grave concern and displeasure at the tactics employed by Sarla's counsel. Sarla and its counsel have not identified any plausible or legitimate reason why they failed to advise Madurkar and his counsel at the outset of his deposition that he was about to be named as a party, that very same day. Surely, they cannot claim ignorance or surprise that a counterclaim was going to be filed. Moreover, because our system is one of open discovery, and not trial by ambush, it cannot be contended that Madurkar was not entitled to know the nature of the claims against him before he was deposed, particularly where Sarla's decision whether to file these claims plainly did not hinge upon any testimony Madurkar might give during the course of this deposition.[8] Further, Sarla's counsel owes professional obligations to deal truthfully and fairly with third persons, and, in fact, these obligations themselves vary depending on whether such third persons are parties. *Compare* MRPC 3.4 ("Fairness to Opposing Party and Counsel") *with* MRPC 4.1 ("Truthfulness in Statements to Others"). It is difficult to view the actions of Sarla's counsel here as anything other than sharp practice that approached the outer limits of legitimate advocacy.

More generally, the dispute underlying present motion is but one more instance of the contentiousness that has permeated the conduct of counsel in this action. To date, the parties have the filed over a dozen discovery-related motions, requiring this Court and Magistrate Judge Capel to devote significant time and resources to the resolution of the parties' numerous discovery squabbles. Almost without exception, these matters readily could have been resolved by the parties themselves with just a modicum of reason and good-faith cooperation. Accordingly, the Court now formally states what it has informally advised counsel in the past— that any further attempts to delay or impede full and fair discovery will be met with stiff sanctions. In particular, the parties should exhaust all possible means of amicably resolving their discovery disputes among themselves before seeking the Court's intervention, and all further discovery-related filings will be carefully examined to ensure that they satisfy the standards of good faith and well-founded argument.

## V. Conclusion

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Sarla Software's November 3, 2000 Motion for Seven–Day Extension of Time is GRANTED.

IT IS FURTHER ORDERED that Defendant Sarla Software's November 3, 2000 Motion to Quash Subpoena and for Protective Order is GRANTED IN PART and DENIED IN PART, in accordance with this Opinion and Order.

IT IS FURTHER ORDERED that Plaintiff Infosystems' November 2, 2000 Motion to Compel Discovery of Defendant Ceridian is DENIED AS MOOT, but without prejudice to Plaintiff's opportunity to timely challenge the discovery responses and objections recently provided by Ceridian.

Finally, IT IS FURTHER ORDERED that Counter–Defendant Narendra Madurkar's August 3, 2000 Motion for Sanctions and Dismissal is DENIED. This ruling is without prejudice to Madurkar's opportunity to raise evidentiary challenges to any subse-

---

8. Indeed, in an earlier order issued in this very case, the Court already cautioned the parties against strategic delays in their compliance with discovery requests, notwithstanding their concerns that witnesses might tailor their testimony if given a prior opportunity to review key documents and discovery responses.

quent use of his deposition testimony in this action.