958 F.Supp. 447 (1996)
Carleton TIPTON, Plaintiff,
v.
SONITROL SECURITY SYSTEMS, INC., et al., Defendants.
No. 4:95CV1773 CDP.
United States District Court, E.D. Missouri, Eastern Division.
November 27, 1996.
*448 Jerome J. Dobson, Weinhaus and Dobson, St. Louis, MO, for Carleton Tipton.
Robert A. Kaiser, Daniel K. O'Toole, Armstrong and Teasdale, St. Louis, MO, Gary P. Barket, Davidson Law Firm, Ltd., Little Rock, AR, for Sonitrol Sec. Systems, Inc., Risk Control Associates, Inc.
Robert N. LeMay, Kane and Russell, Dallas, TX, for Sonitrol Management Corp.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendant's motions for partial summary judgment, for a protective order, and for production of documents. Plaintiff was employed as an administrative assistant by Sonitrol Security Systems, Inc. in Sonitrol's St. Louis, Missouri office from May 16, 1994 until her termination on April 6, 1995. Sonitrol is the name under which defendant Risk Control Associates, Inc., a Little Rock, Arkansas, corporation, does business in Missouri.
Counts I and II of plaintiff's three-count first amended complaint allege that defendants discriminated against plaintiff on the basis of her sex. Count I alleges sexually hostile work environment discrimination and retaliatory discharge in violation of 42 U.S.C. § 2000e et seq. (Title VII), and Count II alleges sexually hostile work environment discrimination and retaliatory discharge in violation of Mo.Rev.Stat. § 213.010 et seq. (MHRA). Count III alleges that defendants violated the service letter statute, Mo.Rev. Stat. § 290.140. Defendants seek partial summary judgment on Counts I and II only.

I. Factual Background

Plaintiff Carleton Tipton was employed by Sonitrol on May 16, 1994. Larry Giuliani was plaintiff's supervisor and the general manager of Sonitrol, and Roderick Koberg, who worked out of Risk Control's Arkansas office, was the president of both Sonitrol and Risk Control during all relevant times. Plaintiff testified that in December of 1994, Giuliani told her that he "had a thing for his wife's younger sister with very sexy brown bedroom eyes," and that plaintiff reminded *449 Guiliani of his wife's sister. Plaintiff also testified that on January 31, 1995, Giuliani sat down at her desk and told her that "his heart had been beating hard all day long and he wasn't able to concentrate during the day," and that he was not able to sleep at night because he couldn't stop thinking about plaintiff's "body and the way ... it looks and how good it looks...." Giuliani called plaintiff at 7:00 p.m. that day and informed her that he "thought he sounded like a love-sick teen-ager." Although there is some debate about the precise language used, defendant has not contradicted this evidence in any material way.
The next day plaintiff reported Giuliani's actions to Sonitrol technical manager Doug Epps, who advised her to discuss the matter with Koberg. Plaintiff telephoned Koberg in Little Rock that afternoon; according to plaintiff, Koberg "laughed" plaintiff's complaint off, and told her that she should understand Giuliani's behavior because Giuliani was away from his wife and his family during the week. Koberg disputes plaintiff's characterization of this conversation.
Koberg met with Sonitrol's St. Louis employees on February 8, 1995, and discussed various issues with them, including sexual harassment. Plaintiff and Mark Gray, one of Sonitrol's salespeople, both testified that Koberg spent almost no time on the subject of sexual harassment during that meeting, and that he made a joke about not having enough money to pay any judgments from a sexual harassment suit anyway. Koberg's daughter, Kendall Koberg, also a Risk Control employee, attended the meeting and testified that she recalled her father making a comment to "the guys such as, `It's a shame you can't hit on the girls in the office anymore, or something to that effect'" in an attempt to "lighten the situation somewhat."
Koberg concedes that he "moved over the [sexual harassment section] rather lightly," but contends that he conducted the meeting this way in order to "honor [plaintiff's] desire to not address [Guiliani] directly" and to keep the matter confidential. Plaintiff disputes Koberg's version of the facts and contends that Koberg assured her that he would personally talk to Giuliani. It is undisputed that Koberg did not speak to Guiliani concerning plaintiff's complaints during Koberg's February 8, 1995, visit to the St. Louis office.
On Koberg's flight back to Little Rock, Arkansas, Kendall Koberg informed her father that she had spoken with plaintiff about her allegations and dissatisfaction with how Koberg handled the meeting. Koberg testified that he was angry with plaintiff for having disclosed what he considered confidential information, and that he therefore called plaintiff the next morning to inform her of his displeasure. According to plaintiff, Koberg told her to "keep her big mouth shut" about such information. Plaintiff testified that the conversation upset her so much that she left work early the day after telling Giuliani that she could not "stand being in the office" with him. Koberg later that day informed Guiliani that he had been accused of "hitting on" plaintiff, and that Giuliani's behavior occasioned the previous day's meeting in St. Louis. Giuliani called plaintiff later that day and apologized to her for his behavior, although the exact content of the conversation is in dispute. Plaintiff testified that she did not resign from her position with Sonitrol at that time because Giuliani assured her that he would modify his behavior.
Plaintiff's evidence shows that beginning on or around February 15, 1995, Giuliani began "hovering" around plaintiff's desk and calling her at home asking "frivolous questions." Plaintiff testified that on one instance Guiliani came up behind her and began massaging her shoulders, and on another began rubbing the middle of her back. In March of 1995, Giuliani allegedly made various sexual comments to plaintiff and others about the women he had watched on an academy awards show; plaintiff objected to these remarks. Plaintiff testified that she did not complain to Koberg about Giuliani's behavior because she had "already tried doing that and it did not get me anywhere." Gray testified that Giuliani would walk up behind plaintiff when she was working at her desk, lean over her, and "pin" her to her desk. Epps testified that Giuliani "stared" at plaintiff, spent an "inordinate" amount of time at her desk, and stood so close to her as *450 to make Epps take notice of Giuliani's behavior; Epps also stated that he was surprised that Giuliani did not "watch his step," given plaintiff's previous complaint about him. According to plaintiff, Giuliani made an additional inappropriate comment concerning a safety pin on plaintiff's dress a few days before she was terminated.
Koberg terminated both plaintiff and Gray on April 6, 1995. According to Koberg, he terminated plaintiff for gaining unauthorized access to Giuliani's computer, retrieving confidential information regarding Gray's impending termination, and passing this information along to Mike Riggenbach, a Risk Control employee from Little Rock. Plaintiff denies having accessed Giuliani's computer or having told Riggenbach about the impending termination, and testified that it was Riggenbach who told her, Gray, and Epps that two of them were going to be terminated that week. Plaintiff claims that her termination was based on retaliation for her complaints about Guiliani.

II. Discussion

Risk Control seeks partial summary judgment on plaintiff's sexually hostile work environment and retaliatory discharge claims under Title VII (Count I) and the MHRA (Count II). In determining whether summary judgment should issue pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the facts, and the inferences from these facts, are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish the absence of a genuine issue of material fact and to show that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). If the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant is unable to make a showing sufficient to establish the existence of an element essential to its case. Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186-87, 111 L.Ed.2d 695 (1990).

A. Hostile Environment

In ruling on a motion for summary judgment on sexually hostile work environment discrimination claims, the Court must resolve all disputed facts and draw all inferences in favor of the nonmoving party.[1]Cram v. Lamson & Sessions Co., 49 F.3d 466, 471 (8th Cir.1995). To prevail on a claim of sexually hostile environment discrimination, a plaintiff must establish that: (1) She belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. See Callanan v. Runyun, 75 F.3d 1293, 1296 (8th Cir.1996); Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). In assessing the hostility of a work environment, the court must consider the totality of the circumstances involved. Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1327 (8th Cir.1994). The key issue is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris v. Forklift Systems, Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Ginsberg, J., concurring).
Risk Control asserts that plaintiff has failed to show that under the totality of the circumstances Giuliani's harassing conduct was "so severe or pervasive that it create[d] an abusive working environment." Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir.1992) (citing Meritor Savings *451 Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405-06, 91 L.Ed.2d 49 (1986)). The Court disagrees that summary judgment is appropriate, and believes that many factual disputes remain on this issue. See Kopp, 13 F.3d at 269-70. Resolution of these factual disputes will require credibility determinations, best made by a jury at trial. Additionally, factual disputes remain on whether Risk Control, when it became aware of Giuliani's improper behavior, took "prompt remedial action reasonably calculated to end the harassment." See Davis v. Tri-State Mack Distribs., Inc., 981 F.2d 340, 343 (8th Cir. 1992) (quotations omitted); see also Kinman v. Omaha Public School Dist., 94 F.3d 463, 464 (8th Cir.1996). Therefore, defendant's motion for summary judgment as to the sexually hostile work environment claims in Counts I and II will be denied.

B. Retaliatory Discharge

In considering a motion for summary judgment on retaliatory discharge claims, a court must employ the three-stage order of proof and presumptions governing discrimination cases in general. Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 549 (8th Cir.1993). Plaintiff must initially establish a prima facie case of retaliation by showing plaintiff's participation in a protected activity, subsequent adverse action by the employer, and a causal connection between the two. Stevens v. St. Louis University Medical Center, 97 F.3d 268, 270 (8th Cir.1996). See also Kobrin v. University of Minnesota, 34 F.3d 698, 704 (8th Cir.1994). Although this question is closer than that relating to the hostile environment claim, when the Court views all the evidence in the light most favorable to plaintiff, the Court must conclude that genuine factual issues remain. Cf. Davis v. Fleming Companies, Inc., 55 F.3d 1369, 1371-74 (8th Cir.1995). Here the parties' credibility is an important, unresolved question, and enough conflicting evidence exists in the case as a whole that the Court cannot say that no reasonable jury could find for plaintiff on this claim. Defendants' motion for summary judgment as to the retaliatory discharge claims in Counts I and II will therefore be denied.

C. Protective Order

Risk Control's motion argues that plaintiff's counsel engaged in ex parte communications with Epps, a former Risk Control manager, and that the Court should therefore enter a protective order barring plaintiff from contacting any former Risk Control managerial employees ex parte.
Missouri Supreme Court Rule 4.2 governs communication with persons represented by counsel and provides that, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Moreover, the comment to Rule 4.2 states:
In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having the managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.
Risk Control argues that State ex rel. Pitts v. Roberts, 857 S.W.2d 200 (Mo.1993), should be read to bar ex parte contact with former managerial employees of a company when the company is represented by counsel. However, this Court finds that neither Pitts nor any other case applying Missouri law has directly addressed this question. Further, the advisory committee rulings cited by Risk Control do not bind this Court because these informal opinions are expressly non-binding. See Missouri Supreme Court Rule 5.30(b).
The language of Rule 4.2 does not on its face involve, or in any way prohibit, ex parte contact with former managerial employees. See Aiken v. Bus. and Indus. Health Group, Inc., 885 F.Supp. 1474, 1476 (D.Kan.1995) (interpreting Kansas Supreme Court Rule 4.2, which is identical to Missouri's Rule 4.2); see also Lirette v. Delchamps Inc., 1996 WL 267991, at *1 (E.D.La. May 20, 1996). There is no indication in the text of Rule 4.2 or its *452 comment that the construction urged by Risk Control is warranted. Indeed, ABA Model Rule 4.2 and its comment are identical to Missouri Rule 4.2 and its comment, and the ABA Committee on Ethics and Professional Responsibility issued a formal opinion in 1991 which determined that "the text of the Rule does not [cover former employees] and the comment gives no basis for concluding that such coverage was intended." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91-359 (1991). The opinion concludes that a lawyer may without violating Model Rule 4.2 communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer. Id.; see also Aiken, 885 F.Supp. at 1477 (providing comprehensive discussion of Rule 4.2 and noting that a "clear majority" of the courts interpreting Rule 4.2 concur with the conclusion reached in the ABA's formal opinion). This Court agrees with this reasoning, and declines Risk Control's invitation to extend Rule 4.2's meaning of "party" beyond its textual moorings. Risk Control's motion for a protective order will therefore be denied.

D. Production of Documents

Risk Control has filed a motion for production of any statements obtained from former Risk Control managerial employees. Defendant does not attempt to contradict plaintiff's claim that she has not obtained written statements from Epps or any other former Risk Control employee. Defendant's motion will therefore be denied.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for partial summary judgment on Counts I and II [# 29] is denied.
IT IS FURTHER ORDERED that Risk Control's motion for a protective order [# 30-1] is denied.
IT IS FURTHER ORDERED that Risk Control's motion for production of any statements obtained from former Risk Control managerial employees [# 30-2] is denied.
NOTES
[1] Title VII and the MHRA apply the same analysis here. See Finley v. Empiregas. Inc., 975 F.2d 467, 473 (8th Cir.1992), cited in Gillming v. Simmons Indus., 91 F.3d 1168, 1171 n. 2 (8th Cir.1996).