**G–I HOLDINGS, INC., Plaintiff,**

v.

**BARON & BUDD; Frederick Baron; Russell Budd; Ness, Motley, Loadholt, Richardson & Poole; Ronald Motley; Joseph Rice; Weitz & Luxenberg; Perry Weitz and Robert Gordon, Defendants.**

**No. 01 Civ. 0216(RWS).**

United States District Court, S.D. New York.

April 9, 2001.

Friedman, Wang & Bleiberg, New York City, by Peter N. Wang, Cahill Gordon & Reindel, New York City, by Thomas J. Kavaler, Susan Buckley, of counsel, for plaintiff.

Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, by Mark C. Zauderer, Jonathan D. Lupkin, Manatt, Phelps & Phillips, Washington, DC, by Abbe David Lowell, Pamela J. Marple, of counsel, for defendants Baron & Budd, Frederick Baron and Russell Budd.

Storch Amini & Munves, New York City, for Ness, Motley, Loadholt, Richardson & Poole, Ronald Motley and Joseph Rice.

Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City, by Elkan Abramowitz, Lawrence S. Bader, Robert M. Radick, of counsel, for Weitz & Luxenberg, Perry Weitz & Robert Gordon.

## OPINION

SWEET, District Judge.

Plaintiff G–Holdings Inc. ("G–I Holdings") has moved for a preliminary injunction barring defendants Baron & Budd, P.C. ("Baron & Budd") and Ness, Motley, Loadholt, Richardson & Poole ("Ness, Motley") from seeking relief in other courts with respect to factual investigation and discovery in this action, pursuant to the All–Writs Act, 28 U.S.C. § 1651 and Federal Rule of Civil Procedure 65, and defendants Baron & Budd, Frederick Baron, Russell Budd, Ness, Motley, Ronald Motley, Joseph Rice, Weitz & Luxenberg, Perry Weitz, and Robert Gordon (collectively, the "Defendants") have cross-moved for a protective order barring G–I Holdings from conducting *ex parte* interviews of former employees of the Defendants, pursuant to Federal Rule of Civil Procedure 26(c). For the reasons set forth below, the motion for a preliminary injunction is denied, and the motion for a protective order is granted.

### The Parties

G–I Holdings is a holding company which includes certain former asbestos manufacturers.

The Defendants are law firms, or principals thereof, which represent plaintiffs in personal injury asbestos litigation.

### Prior Proceedings

This action was initiated by the filing of a civil RICO suit by G–I Holdings against the Defendants on or about January 10, 2001. The complaint alleges *inter alia* that the Defendants engaged in a scheme to inundate the judicial system, and G–I Holdings, with hundreds of thousands of asbestos cases without regard to their merit, and have engaged in various illegal acts in connection with such litigation including suborning false testimony.

On February 1, 2001, Baron & Budd secured an *ex parte* order from a Texas state court enjoining one of G–I Holdings' investigative firms, Kroll Associates ("Kroll"), from contacting Baron & Budd's current or former employees. On February 2, 2001, this suit was removed to the federal district court in Dallas, Texas, by Kroll, and on February 8, 2001, it was dismissed by Baron & Budd. That same day, Baron & Budd filed a new action in Texas state court that included non-diverse defendants. This second action was removed to the federal district court in Dallas, Texas, where it remains presently. The time to move to remand this case has not yet expired.

On February 8, 2001, Ness Motley secured an *ex parte* order from a South Carolina court enjoining G–I Holdings' investigators from contacting that firm's current and former employees but has subsequently withdrawn the action.

On February 13, 2001, the parties moved before this Court by order to show cause for the relief sought herein. A temporary restraining order was entered, which the parties later extended by stipulation until the matter could be heard on April 3, 2001. Additional submissions were received, and oral argument was heard on April 3, 2001, at which time the matter was marked fully submitted.

### Facts

The following facts are drawn from the affidavits, declarations, and exhibits of the

parties, and are either undisputed or are accepted as true for purposes of this motion.

Subsequent to the filing of this action, G–I Holdings through its investigative firms, began contacting certain former employees of the Defendants to seek to conduct *ex parte* interviews with them. Some of the persons contacted notified the Defendants and described the interview requests and interview topics.

The former employees who were contacted include a "claims paralegal," a word processor whose duties included entering into the firm's computer system documents such as client waivers, consents, and death compromise petitions, and an administrative assistant. The areas of inquiry in the interviews have included: how the Defendants generate litigation documents such as waivers and consents, retainer agreements, and death compromise petitions; how they prepare clients for depositions; and whether a specific attorney at one firm made decisions regarding the allocation of settlement funds among the firms' clients.

Kroll instructs its individual investigators to disclose their identity, disclose their affiliation with the investigative firm, disclose the nature of their investigation, that G–I Holdings is Kroll's client, instruct the subjects not to disclose any privileged communications or information communicated by any clients of their former law firm employer in the course of the firm's representation of those clients, and instruct the subjects not to disclose any information that their former law firm employer would legitimately expect to remain confidential. To the best of Kroll's knowledge, these instructions are followed.

### Discussion

### I. *The Motion For A Preliminary Injunction*

The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. "[T]he federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court." *In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985).

The standard for granting a preliminary injunction under Rule 65 in this circuit is "(1) a showing of irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant." *Civic Ass'n of the Deaf v. Giuliani*, 915 F.Supp. 622, 631 (S.D.N.Y.1996) (*citing Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994)); *see also Fundamental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 998–99 (2d Cir.1997).

G–I Holdings seeks an order enjoining Baron & Budd and Ness, Motley from pursuing state court litigation regarding discovery matters in this action. However, Baron & Budd's most recent Texas state court action has been removed to the federal district court in Dallas, Texas, and Ness, Motley has withdrawn the action it had previously filed in the state court of South Carolina. Thus, there is no state court action pending at this moment, making the relief sought unnecessary under the circumstances.[1] Therefore, the motion will be denied with leave to renew if such litigation is pursued by any of the Defendants in the future.[2]

### II. *The Motion For A Protective Order*

Under the Federal Rules "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). A district court has broad discretion in governing discovery. *See* Fed.R.Civ.P. 26(c). However, a party seeking the issuance of a protective order relating

---

1. This conclusion is not meant to imply that relief may not be granted absent an already-pending state court action.

2. The time for Baron & Budd to move to remand the Texas action to the state courts has not yet expired, and this Court granted Baron & Budd permission to file such a motion if a decision had not been rendered on the instant motions by the deadline.

to discovery must show good cause that such an order is needed to protect it from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed.R.Civ.P. 26(c); *see also, e.g., Giarraffa v. Andersen Corp.,* No. CV 88–2490, 1990 WL 129982, at *1 (E.D.N.Y. Aug. 27, 1990). Where a party seeks a protective order on the grounds that the information sought is protected by the attorney-client privilege, that party has the burden of establishing the essential elements of the privilege. *See von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2d Cir.1987); *United States v. Housing Authority of the Town of Milford,* 179 F.R.D. 69, 70 (D.Conn.1997). In determining whether to issue a protective order, and the form any such order should take, the court must "compare the potential hardship to the party against whom discovery is sought, if discovery is granted, with that to the party seeking discovery if it is denied." *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 169 (E.D.N.Y.1988), *aff'd,* 870 F.2d 642 (Fed.Cir. 1989); *see also, e.g., Hommel v. Pierce,* No. 95 Civ. 2013, 1997 WL 26277 (S.D.N.Y. Jan. 23, 1997) (mem.op.) (protective order must "strike[ ] proper balance between plaintiff's litigation needs and [defendant's] need for confidentiality").

The Defendants seek a protective order barring G–I Holdings from conducting *ex parte* interviews with the Defendants' former employees on the ground that these interviews threaten to invade the attorney-client privilege between the Defendants and their clients, and also on the ground that the information sought is not relevant. G–I Holdings does not dispute that they may not seek to obtain privileged information through these interviews, but maintain that the interviews may not be precluded because they are merely engaging in a time-honored investigatory technique, they do not seek to uncover privileged matters, and the mere risk that such matters might be disclosed does not constitute good cause for the protective order sought.[3]

█ It is consistent with "time-honored and decision-honored principles … that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 42 (2d Cir.1975); *see also, e.g., Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C.1983) (Federal Rules of Civil Procedure "have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak"). This principle applies to former employees of an adverse party. *See, e.g., Katt v. New York City Police Dep't,* No. 95 Civ. 8283, 1997 WL 394593 (S.D.N.Y. July 14, 1997); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 627–28 (S.D.N.Y. 1990). Indeed, *ex parte* interviews with such persons have been recognized as having an important role in information gathering in that former employees "often have emotional or economic ties to their former employer and would sometimes be reluctant to come forward with potentially damaging information if they could only do so in the presence of the corporation's attorney." *Polycast,* 129 F.R.D. at 628.

However, former employees who possess knowledge regarding privileged communications do present a "distinct problem" where *ex parte* interviews are concerned. *Valassis v. Samelson,* 143 F.R.D. 118 (E.D.Mich. 1992); *Polycast,* 129 F.R.D. at 628. One aspect of this problem is that, where the former employee is a lay person, it is unrealistic to think that he will know what information or communications are privileged, so that even where disclosure of such matters is not intended it may well occur inadvertently. *See United States v. Omni Int'l Corp.,* 634 F.Supp. 1414 (D.Md.1986) (condemning government tactic of interviewing former secretary of adversary's lawyer and commenting that "[u]nlike lawyers, who can protect the attorney-client privilege, secretaries have no legal training and cannot be expected to make sophisticated judgments regarding the scope of the privilege"); *see also MMR/Wallace Power & Indus., Inc. v. Thames Assocs.,*

---

**3.** G–I Holdings also makes a passing reference to the crime-fraud exception to the attorney-client privilege, but does not actually urge that the exception presently applies.

764 F.Supp. 712, 726 (D.Conn.1991) (attorney's claim that no privileged information was revealed during *ex parte* interview with adversary's former employee, who had extensive exposure to such information, "rings hollow ... in light of former employee's own admissions that, as a lay person, he did not know what information or communications were protected by the attorney-client privilege").

It has been recognized that a protective order may issue upon a showing that former employees were privy to privileged information. *Polycast,* 129 F.R.D. at 629 (observing that "[w]here there is a strong likelihood that a former employee does possess [privileged] information, an appropriately tailored order can be issued," though showing of such likelihood had not been made); *Valassis v. Samelson,* 143 F.R.D. 118, 125 (E.D.Mi.1992) ("Should Samelson's attorney be able to establish a basis for the application of the attorney-client privilege to information in the possession of [former employee] Ms. Baer, the Court will enter an appropriate protective order governing such information."); *Rentclub, Inc. v. Transamerica Rental Fin. Corp.,* 811 F.Supp. 651 (M.D.Fla.1992) ("Privileged communications present a distinct problem with respect to contact with former employees, thus *ex parte* contact should be barred to prevent disclosure of any inadvertent confidential communications."); *see also MMR/Wallace,* 764 F.Supp. at 725–27 (disqualifying attorney who interviewed adversary's former employee who, "in his role as trial consultant/paralegal ... had access not merely to confidential information regarding the [subject matter of the litigation], but also about the plaintiff's litigation strategy").

To say that a protective order may issue, however, does not mean that it always

should.[4] Nor does it answer the question of the appropriate nature and scope of such an order.

■■■ Among the former employees whom G–I Holdings' investigators have interviewed or attempted to interview are a "claims paralegal," a word processor whose duties included entering into the firm's computer system documents such as client waivers, consents, and death compromise petitions, and an administrative assistant. Given the nature of a Defendant's operations, as law firms, and of the work of the types of former employees who are sought to be interviewed, there is little doubt that these persons were exposed to privileged material during the course of their work and, indeed, that such exposure would have been extensive.[5] Nor does G–I Holdings seriously dispute that such exposure occurred. Such persons are more like "former employees acting as trial consultants or otherwise actively and extensively working with the ... attorney," *Shoreline Computers,* 2000 WL 371206, at *2, than former employees who have been found not to have had sufficient exposure to warrant a protective order, *compare MMR/Wallace,* 764 F.Supp. at 725 (former employee who worked as trial consultant-paralegal had such exposure to confidential and privileged material that disqualification of attorney who interviewed him *ex parte* was warranted) with *Shoreline Computers,* 2000 WL 371206, at *2 (corporation's former employees who had only "[a] few meetings and telephone conversations" with corporation's counsel did not have sufficient exposure to privileged material to warrant protective order).

However, G–I insists that such exposure does not warrant a bar on the interviews, and that the Defendants must make a specific showing that privileged communications will be revealed. Moreover, G–I Holdings main-

---

**4.** G–I Holdings relies heavily on a Connecticut state court case which characterizes the idea of a per se rule against *ex parte* interviews with former employees who have been exposed to privileged information is a "far-reaching view." *Shoreline Computers, Inc. v. Warnaco, Inc.,* No. CV 990422853S, 2000 WL 371206, at *2 (Super.Ct.Conn. Apr. 3, 2000). Although the persuasive value of a state court case applying state law on such a matter is limited, the existing federal authority does not support a per se rule either.

**5.** The case law, unsurprisingly, generally concerns former employees of corporations who have either been exposed to information covered by the corporate privilege, or have had contact with counsel for the corporation. The possible range of exposure to privileged information (from very little to a great deal) in this rather unusual circumstance, where the litigant and employer is itself a law firm, is particularly vexing.

tains that the Defendants cannot make this showing because the investigators are directed to instruct the interviewees that they are not to reveal privileged material and, according to G–I Holdings, privileged material is not sought.

As noted previously, it is unrealistic to expect even the best-intentioned lay person to be able to safeguard the attorney-client privilege. The danger of inadvertent disclosure is compounded by the fact that the investigators are themselves lay persons and, thus, are in little better position than the interviewees to assess whether privileged material is being disclosed.[6] Moreover, assuming that G–I Holdings does not actually seek to invade the privilege, the fact remains that some of the areas of inquiry—such as how the firms prepare their clients for deposition—come dangerously close to such matters.[7] This adds further to the risk of inadvertent disclosure.

The cases relied upon by G–I Holdings are not to the contrary, as they all involve situations in which the former employees had less exposure to confidential material than is the case here. *See Housing Authority*, 179 F.R.D. at 69 (former employee not deemed a "trial consultant" based on having had one meeting with former employer's attorney about which no specifics offered); *Fu Investment Co. v. Commissioner*, 104 T.C. 408, 415–16, 1995 WL 141555 (1995) (corporation's former employees only asserted "in a general fashion" to have had contact with corporation's counsel that made them privy to privileged information); *Shoreline Computers*, 2000 WL 371206, at *2 (contact involved a "few meetings and telephone conversations" with corporation's counsel, even though discussed litigation strategy, not enough).

 Finally, there is the matter of the balance of hardships. Recognizing that G–I Holdings' fact-finding may be circumscribed to some degree if they cannot continue the *ex parte* interviews, and the importance generally speaking of the right to engage in this type of informal discovery, given the importance of the attorney-client privilege and the potential impact of its breach on the Defendants' clients, the hardships on balance weigh in favor of the Defendants.

Unfortunately, this is a situation in which it is very difficult to craft a true compromise. The Defendants insist that the only relief that will protect them is a complete bar on the *ex parte* interviews—or notice and the right to be present, which would mean that the interviews were no longer *ex parte*. G–I Holdings insists that the only solution is to permit it to continue the interviews as before. Neither side has been able to offer another comprehensive solution such as, for example, directing the investigators not to ask certain types of specific questions.

Therefore, the following alternatives are provided. First, G–I Holdings may continue the interviews with notice to Defendants' counsel and with the right for those counsel to be present. Alternatively, the interviews may be conducted in the presence of a special master, whose task will be to monitor the interviews with respect to the issue of privilege. If the second alternative is chosen, the parties shall agree upon a person to serve as a special master or, in the event they are unable to do so, each side shall submit a list of three names and the Court will make the designation. Finally, costs for the special master shall be shared equally by the relevant parties, *i.e.*, G–I Holdings and the Defendant whose former employee is being interviewed.

### Conclusion

Therefore, for the reasons set forth above, the motion for a preliminary injunction is denied, and the motion for a protective order is granted.

It is so ordered.

---

**6.** The Defendants represent as much, and this representation has not been contradicted by G–I Holdings.

**7.** It is recognized that the privilege only extends to matters communicated from a client to a lawyer, rather than vice-versa, *see LNC Investments,* *Inc. v. First Fidelity Bank*, No. 92 Civ. 7584, 2000 WL 1182772, at *3 (S.D.N.Y.2000), and does not include the underlying facts communicated by the client to the attorney, *see Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 79–80 (S.D.N.Y.1986).