**Audrey SMITH, Plaintiff,**

v.

**KALAMAZOO OPHTHALMOLOGY,**
**Defendant.**

**No. 5:03–CV–20.**

United States District Court,
W.D. Michigan,
Southern Division.

April 21, 2004.

James B. Thelen, Miller, Canfield, Paddock & Stone, PLC, Lansing, MI, for Plaintiff.

William F. Piper, Piper, Willoughby & Wise, PLC, Portage, MI, for Defendant.

## OPINION

QUIST, District Judge.

The Court has before it Defendant's, Kalamazoo Ophthalmology, emergency motion for disqualification, sanctions, protective order and order to show cause. By this motion, Defendant seeks disqualification of Plaintiff's counsel, William F. Piper ("Piper"), and various other forms of relief, on the ground that Piper had improper *ex parte* contacts with a former employee of Defendant who possessed extensive knowledge of attorney-client communications directly related to this litigation. Also before the Court is Plaintiff's, Audrey Smith ("Smith"), motion to compel the deposition of Dr. Stephen Higgins and for sanctions, which also sets forth Smith's response to Defendant's motion. For the reasons set forth below, the Court will deny Defendant's motion and grant Smith's motion.

### I. *Background*

Smith is a former employee of Defendant. During the period of time in which the claims in this case arose, Smith served as Defendant's Personnel Manager. According to Smith's allegations, in May 2001, Defendant reduced her working hours from full time to 16 hours per week and reduced her job duties. Smith also alleges that Defendant thereafter hired much younger employees to perform job functions with which Smith had more experience and could have performed and that Defendant outsourced payroll work which Smith could have performed. In November 2001, Smith filed a complaint with the Michigan Department of Civil Rights and a charge of discrimination with the Equal Employment Opportunity Commission claiming age discrimination.

Smith filed this case on January 24, 2003, in the Kalamazoo County Circuit Court, alleging claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Michigan Elliott–Larsen Civil Rights Act ("MEL-CRA") based upon Defendant's reduction of her work hours. At that time, Smith was still employed by Defendant. Defendant removed the case to this Court on February 14, 2003, on the basis of federal question jurisdiction over the ADEA claim. Defendant terminated Smith's employment on or about October 27, 2003. On December 12, 2003, Smith filed an amended complaint, adding a claim of retaliatory termination under both the ADEA and the MELCRA.

The specific facts giving rise to the instant motions relate to Piper's contacts with Anne Marie Salliotte ("Salliotte"). Salliotte was Defendant's Office Administrator from approximately March 2000 until May 2002. (Higgins Aff. ¶ 3, attached to Def.'s Mot.) In that position, Salliotte was responsible for overseeing the day-to-day business operations of Defendant, including its accounting, payroll, and, after May 2001, its personnel functions. (*Id.*) From May 2001 to May 2002, Smith reported to Salliotte. (*Id.*) Prior to that time, Smith and Salliotte both reported to Defendant's president, Stephen E. Higgins ("Higgins"). Defendant terminated Salliotte's employment in May 2002.

In August or September 2003, Piper informed Defendant's counsel, James B. Thelen ("Thelen"), that he wanted to depose Salliotte. By letter dated September 18, 2003, Thelen informed Piper that during her employment with Defendant, Salliotte was a party to attorney-client communications and Defendant would assert the attorney-client privilege as to any such communications. Thelen also indicated that it would be inappropriate for Piper to have any *ex parte* communications with Salliotte and stated, "Should you not agree with my assertion of privilege in this matter, please give me the courtesy of advance notice so that I may seek a protective order from the Court." (Letter from The-

len to Piper of 9/18/03, Def.'s Mot. Ex. 1.) Sometime shortly thereafter Thelen contacted Salliotte and informed her that Piper wanted to depose her. (Thelen Aff. ¶ 6, attached to Def.'s Mot.) In a letter to Piper dated October 9, 2003, Thelen indicated that Salliotte would be willing to appear for a deposition and requested that Piper contact him to arrange a date for the deposition. (Letter from Thelen to Piper of 10/9/03, Def.'s Mot. Ex. 2.) According to Thelen, Piper never provided a deposition date or issued a deposition notice, nor did he respond to Thelen's assertion of the privilege or give Thelen notice that he intended to have *ex parte* contact with Salliotte. (Thelen Aff. ¶ 7.) Piper recalls things differently. According to Piper, he requested that Thelen set up the deposition, and Thelen agreed to do so. (Pl.'s Mot. ¶ 5 & Piper Aff., attached to Pl.'s Mot.) Piper states that Thelen never got back with him regarding a deposition date or whether he would produce Salliotte for a deposition. (*Id.* ¶ 6.) Piper also states that he informed Thelen that he disagreed with Thelen's position on the privilege issue and that he did not agree to refrain from having *ex parte* contact with Salliotte. (*Id.* ¶ 1.)

Piper claims that he did not initiate contact with Salliotte. Rather, according to Piper's Secretary, Michelle Clark, Salliotte called Piper's office on the morning of October 8, 2003, indicating that she was aware that Piper wanted to depose her. (*Id.* ¶ 7 & Clark Aff., attached to Pl.'s Mot.) Salliotte told Clark that she did not want to speak with Thelen because she considered Thelen adverse to her (Salliotte's) interests, and Salliotte indicated that she believed that her own termination was based upon age discrimination. (*Id.*) Salliotte stated that she wanted to speak with Piper regarding her own rights as well as her knowledge of facts relating to Smith's claim against Defendant and indi-

cated that she did not want to give a deposition. (*Id.*)

Piper states that Salliotte, at her own suggestion, came to his office on October 15, 2003, and spoke to Piper about facts surrounding her own termination by Defendant as well as her relationship with Smith and her knowledge, based upon comments from others around the office, regarding the decision to reduce Smith's hours. (*Id.* ¶ 9.) Prior to the meeting, Piper informed Salliotte that he would not be asking her questions about the content of conversations she had with Thelen or any other attorney, to the extent that such conversations occurred. (*Id.* ¶ 8.) At the conclusion of the October 15, 2003, interview, Salliotte signed an affidavit based upon the information she provided to Piper during the interview.

During a telephone conversation on March 24, 2004, Piper informed Thelen that he had obtained an affidavit from Salliotte. The following day, Thelen requested that Piper provide him a copy of Salliotte's affidavit. Piper refused to do so, claiming that his interview with Salliotte was protected work product. Thelen informed Piper of his belief that Piper's contacts with Salliotte to obtain her written statement were improper because of her exposure to attorney-client communications during her employment with Defendant. Thelen also stated that he would not produce Higgins and another individual for previously-noticed depositions because of Piper's *ex parte* contact with Salliotte.

Thelen states that he had numerous communications with Salliotte on various employment matters for Defendant, and Salliotte contacted Thelen on behalf of Defendant for representation regarding Smith's administrative complaint filed with the MDCR. (Thelen Aff. ¶ 2.) From May 2001 to May 2002, Thelen conferred with

Salliotte on twelve occasions to discuss and provide legal advice regarding the reduction of Smith's hours and Defendant's response to Smith's administrative complaint, including "possible alternatives to settle, resolve or mediate those charges, and the legal strengths and weaknesses of [Smith's] claims." (*Id.*) Thelen also states that Salliotte was his main contact for information relating to Smith's administrative complaint, and his legal advice to Defendant was based entirely upon the information and communications he received from Salliotte. (*Id.*)

## II. *Discussion*

■ Defendant contends that Piper violated Michigan Rule of Professional Conduct 4.2 by having *ex parte* contacts with Salliotte. Defendant contends that under the circumstances of this case, disqualification of Piper and his firm is appropriate. Defendant requests other relief as well, including that Plaintiff be barred from informing her new counsel of any information learned as a result of Piper's *ex parte* contacts with Salliotte; that Piper be prohibited from conducting any additional discovery or from contacting any individuals having knowledge about the case, including Salliotte; that Salliotte be stricken from Smith's witness list and Smith be prohibited from calling or cross-examining Salliotte as a witness at trial; and that Piper be ordered to turn over to the Court and Defendant the final version of Salliotte's affidavit and any notes or other records he prepared based upon his contacts with Salliotte. Smith contends that Salliotte is not a person to whom the attorney-client privilege extends, and that in any event, Piper did not ask Salliotte about any communications that she had with Thelen. Therefore, Smith argues, the Court should order Defendants to produce Higgins for a deposition and impose sanctions against Defendants.

## A. Motion to Disqualify

■ As the Court views it, Defendant's motion presents two distinct issues: (1) whether Piper's *ex parte* contact with Salliotte violated MRPC 4.2; and (2) whether Salliotte disclosed information protected by the attorney-client privilege. The Court will discuss each issue separately. As a preliminary matter, however, the Court must determine its authority to grant the relief requested by Defendant. Defendant cites Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure and Local Rule 83.1(k)(i) as the bases for its motion. Rule 26(c) provides that "for good cause shown" by the party from whom discovery is sought, a court may issue an order prohibiting or limiting discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 37(a)(4) authorizes a court to award expenses or impose sanctions against a party who fails to make Rule 26(a) disclosures or to provide discovery allowed under the Federal Rules of Civil Procedure. Local Rule 83.1(k)(i) provides that a judge of this district may impose discipline, except suspension or disbarment from this Court, on any attorney who violates the Rules of Professional Conduct as adopted by the Michigan Supreme Court. Rule 37(a)(4) is not a proper basis for Defendant's motion because Defendant is not seeking to compel discovery or mandatory disclosures. In addition, whether Rule 26(c) applies in this situation. is questionable. *See Amarin Plastics, Inc. v. Md. Cup Corp.*, 116 F.R.D. 36, 38 (D.Mass.1987) (finding that Rule 26(c) provided no authority to issue the requested protective order because "[i]nformal witness interviews are not encompassed by Rule 26"); *G–I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533 (S.D.N.Y.2001) (relying on Rule 26(c) as a basis for entering a protective order re-

garding *ex parte* interviews). Finally, Local Rule 83.1(k)(i) provides a basis for some of the relief requested against Piper if the Court determines that he violated the Rules of Professional Conduct, but it does not authorize many of the specific limitations which Defendant request regarding the information obtained from Salliotte. However, to the extent that Piper engaged in unethical behavior, as alleged, and obtained privileged information from Salliotte, the Court may resort to its " 'inherent power' to 'levy sanctions in response to abusive litigation practices.' " *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir.1993) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)).

## 1. Propriety of Contact with Salliotte

■ Whether an attorney has violated ethical standards in federal court is a matter of federal law. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1316 (3d Cir.1993) (citing *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1413 (E.D.N.Y. 1989)). In making such a determination, this Court looks to the Michigan Rules of Professional Conduct. *City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F.Supp.2d 219, 231 (W.D.Mich.2000) (citing W.D. Mich. LCivR 83.1(j)).

■ Michigan Rule of Professional Conduct 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

M.R.P.C. R. 4.2. The rule serves to: (1) prevent an attorney from circumventing opposing counsel in order to obtain statements from the adversary; (2) to preserve the integrity of the attorney-client rela-

tionship; (3) to prevent the inadvertent disclosure of privileged information; and (4) to facilitate settlement by involving lawyers in the negotiation process. *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990) (discussing Disciplinary Rule 7–104(A)(1) of the New York Code of Professional Responsibility); *see also Valassis v. Samelson*, 143 F.R.D. 118, 120 (E.D.Mich.1992) (discussing the purpose of Rule 4.2). The comment to Rule 4.2 addresses the scope of its application where the client is an organization:

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

M.R.P.C. R. 4.2 cmt.

Neither the text of the rule nor the comment indicates whether the proscription against contacts with an organizational adversary's employees extends to former employees. A majority of courts that have considered the issue have held that Rule 4.2 does not bar *ex parte* communications with an adversary's former employees who are not themselves represented in the matter. *See, e.g., Davidson Supply Co. v. P.P.E., Inc.*, 986 F.Supp. 956, 958 (D.Md.1997); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 913 F.Supp. 1306, 1315 (N.D.Iowa 1996); *Hanntz v. Shiley, Inc.*, 766 F.Supp. 258, 263 (D.N.J.1991): *Tipton v. Sonitrol Sec. Sys., Inc.*, 958 F.Supp. 447, 451–52 (E.D.Mo.1996); *In re Bank of La./Kenwin Shops Inc., Contract Litig.*, No. Civ. A.97MDL No. 1193, 1998 WL 788776, at *2 (E.D.La. Nov. 10, 1998). *See*

*generally* Benjamin J. Vernia, *Right of attorney to conduct ex parte interviews with former corporate employees,* 1998 WL 141907, 57 A.L.R. 5th 633 (1998). Courts adopting this view have generally found that the language of Rule 4.2, which refers to "a party," cannot reasonably be interpreted to include former employees where there is no continuing relationship between the organizational employer and its former employee that would furnish a sufficient legal basis for imputing the former employee's statements to the employer. *See Aiken v. Bus. & Indus. Health Group, Inc.,* 885 F.Supp. 1474, 1476 (D.Kan.1995) ("The plain meaning of the phrase 'party the lawyer knows to be represented by another lawyer in the matter' means a party to the litigation. A former employee with no present relationship to the organizational party is not a 'party' as referred to in the rule."); *Hanntz,* 766 F.Supp. at 266 ("Because RPC 4.2 refers only to represented parties and because the purposes of RPC 4.2 would not be served by an interpretation otherwise, it cannot be said that RPC 4.2 applies to former employees who are not parties."); *Davidson Supply Co.,* 986 F.Supp. at 958 (declining to interpret Rule 4.2 beyond its "plain language"). In addition, courts espousing the majority view note that the concerns Rule 4.2 is intended to address are not present in the case of former employees. That is, "a former employee no longer works on the organization's behalf, is unlikely to be represented by the organization's counsel, and unlikely to be a participant in the process leading to resolution of the dispute." *Terra Int'l, Inc.,* 913 F.Supp. at 1314; *see also Thorn v. Sunstrand Corp.,* No. 95 C 50099, 1997 WL 627607, at *2 (N.D.Ill. Oct. 10, 1997) (noting that "the fact that the comment specifically includes those employees whose statements may constitute admissions within the purview of Rule 4.2, suggests to the courts that former employees, whose statements can no longer legally bind a former employer, are not covered by the rule"). The American Bar Association Committee on Ethics and Professional Responsibility has also taken the position that Rule 4.2 does not apply to former employees:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, [sic] the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.
>
> Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

ABA Committee on Prof'l Ethics & Prof'l Responsibility, Formal Op. 91–359, at 3 (1991).

Some courts in the minority have allowed *ex parte* contact subject to certain conditions. For example, in *Porter v. Arco Metals Co.,* 642 F.Supp. 1116 (D.Mont. 1986), the court held that *ex parte* contact is not permitted with former employees with managerial responsibilities concerning the subject matter of the litigation. *Id.* at 1118. In *Michaels v. Woodland,* 988 F.Supp. 468 (D.N.J.1997), the court stated

that Rule 4.2 would apply to a former employee within the litigation control group. *Id.* at 472. The court in *Camden v. Maryland,* 910 F.Supp. 1115 (D.Md. 1996), held that Rule 4.2 bars *ex parte* contact with former employees who have had extensive exposure to privileged information. *Id.* at 1121–22. The *Camden* court's analysis relied upon, in part, Preliminary Draft No. 10 of the Restatement of the Law Governing Lawyers, which would impose a no-contact rule upon a broad class of former employees, including those possessing trade secrets and confidential information. *Id.* at 1121. A few courts have taken an even more restrictive view of the rule, holding that it precludes *ex parte* contact with *all* former employees. *Pub. Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 745 F.Supp. 1037, 1042 (D.N.J.1990).

Having considered the reasons advanced by the majority of courts, which conclude that Rule 4.2 does not apply to *ex parte* contacts with former employees, and the minority of courts, which hold that Rule 4.2 applies to former employees at least in some limited circumstances, this Court concludes that the majority view is more persuasive. Specifically, a situation involving a former employee does not implicate the underlying policies behind Rule 4.2, and neither Rule 4.2 nor the comment to the rule can be reasonably interpreted to refer to former employees, who cannot bind the employer by their statements. *Cram v. Lamson & Sessions Co.,* 148 F.R.D. 259, 265 (S.D.Iowa 1993). As the court in *Valassis v. Samelson,* 143 F.R.D.

118 (E.D.Mich.1992), observed, under Rule 4.2 and the comment,

> If one party is an organization, the first level of inquiry is whether the person in question is an agent of that organization. If he is not, then he cannot be a party because he lacks any relevant connection to the organization which could reasonably place him in the role of a party.

*Id.* at 123. Under this commonsense analysis of Rule 4.2, the Court concludes that Piper's contact with Salliotte was not improper because Defendant has not shown that Salliotte was in some type of an agency relationship with Defendant at the time she contacted Piper. At the time of the contact, Salliotte was not employed by Defendant and, in fact, her interests were even adverse to Defendant's interests.[1]

The Court notes that although *ex parte* contact with former employees is not subject to Rule 4.2, former employees "are 'barred from discussing privileged information to which they are privy.'" *In re Bank of La./Kenwin Shops Inc., Contract Litig.,* No. CIV.A.97MDL No. 1193, 1998 WL 788776, at *3 (E.D.La. Nov. 10, 1998) (quoting *Orlowski v. Dominick's Finer Foods, Inc.,* 937 F.Supp. 723, 728 (N.D.Ill. 1996)). Attorneys also have a responsibility to refrain from inquiring into areas that may be subject to the attorney-client privilege or the work product doctrine. *Cram,* 148 F.R.D. at 266. Therefore, an attorney may have *ex parte* contact with an unrepresented former employee of an organizational party, subject to the limitation that the attorney may not inquire into areas

---

1. Defendant cites Formal Ethics Opinion R–2 (Apr. 21, 1989) by the professional and judicial ethics committee of the State Bar of Michigan which states that Rule 4.2 prohibits *ex parte* contact where the former employee "is privy to privileged information." Mich. Prof'l & Judicial Ethics Comm. Informal Op. R–2 (1989). As Defendant notes, such opinions are not binding upon this Court. *City of Kalamazoo,* 125 F.Supp.2d at 232 n. 4. The Court has reviewed that opinion and, in light of other authorities which the Court finds more persuasive in light of the plain language of Rule 4.2 and the comment, the Court declines to follow that opinion. Furthermore, the Michigan opinion is at odds with and predates the ABA opinion, which presents a more thorough analysis of the issue.

subject to the attorney-client privilege or work product doctrine. *See Palmer v. Pioneer Hotel & Casino,* 19 F.Supp.2d 1157, 1167 (D.Nev.1998); *Breedlove v. Tele–Trip Co.,* No. 91 C 5702, 1992 WL 202147, at *2 (N.D.Ill. Aug. 14, 1992).

## 2. Disclosure of Privileged Information

■ Although the Court has concluded that Piper's contacts with Salliotte were not improper, Defendant may still be entitled to some relief if the contact resulted in the breach of Defendant's attorney-client privilege. Smith contends that Defendant has failed to show that Salliotte's contacts with Thelen in connection with Smith's administrative complaint were subject to the attorney-client privilege. The Court disagrees, because Defendant has shown that Salliotte participated in preparing Defendant's response to Smith's complaint in the administrative proceeding and that she had more than incidental contact with Thelen during that time. Thus, there is a reasonable basis to conclude that Salliotte was privy to privileged information. However, it is unreasonable to assume that all of the information Salliotte possesses is subject to the attorney-client privilege.

In this case, Defendant has failed to show that Piper inquired into privileged matters during his communications with Salliotte. Piper has indicated that he took appropriate precautions against disclosure of privileged information by informing Salliotte that he would not be inquiring into discussions Salliotte had with Thelen or any other attorney and that he did not inquire into areas likely to involve privileged communications, such as negotiations, settlement strategy, or settlement posture in the administrative proceeding. Because Piper is an officer of the Court, the Court may accept Piper's representations as true. *See Olson v. Snap Prods., Inc.,* 183 F.R.D. 539, 544 (D.Minn.1998); *Thorn,* 1997 WL 627607, at *3. Nonethe-

less, even if Salliotte did not disclose privileged information to Piper, Piper was aware of Defendant's concerns about the possibility that Salliotte would disclose such information, and the better course of action would have been for Piper to advise Thelen of his impending meeting with Salliotte to allow Defendant an opportunity to seek a protective order limiting Piper's communications with Salliotte to areas of non-privileged information. If Defendant still has concerns regarding Salliotte's statements to Piper, Defendant may contact or depose Salliotte to determine what she said during the conversation. If Defendant can produce sufficient evidence showing that privileged information was disclosed, Defendant may seek an appropriate protective order excluding such information, *see Valassis,* 143 F.R.D. at 125, and sanctions against attorney Piper.

## B. Motion to Compel Deposition

■ Smith has moved to compel Defendant to produce Higgins for a deposition. Smith had previously noticed Higgins' deposition for the afternoon of March 26, 2004. After Thelen learned that Piper had *ex parte* contact with Salliotte, Thelen refused to produce Higgins (along with another witness not mentioned in the instant motion) apparently on the basis that Piper would use privileged information to depose Higgins. Because Defendant has not shown that Salliotte divulged confidential information to Piper, Defendant has no basis for refusing to produce Higgins for a deposition. Therefore, the Court will order Defendant to produce Higgins for a deposition prior to the May 1, 2004, discovery deadline.

■ Finally, the Court will deny Smith's request for sanctions against Defendant. As discussed above, Piper could have avoided this present situation by notifying Thelen of his intention to meet with Sal-

liotte. Although Piper did not initiate the contact, he had a sufficient opportunity to provide notice to Thelen to allow Thelen to seek a protective order, but failed to do so. Moreover, given that there was no controlling authority on the issue of whether Piper's *ex parte* contact with Salliotte was improper, Defendant did not act unreasonably in refusing to produce Higgins for the deposition.

### III. *Conclusion*

For the foregoing reasons, the Court will deny Defendant's emergency motion for disqualification, sanctions, protective order and order to show cause and will grant Smith's motion to compel the deposition of Higgins.

An Order consistent with this Opinion will be entered.