**UNITED STATES of America ex rel. George Bradford HUNT, Walter W. Gauger, and Joseph Piacentile, Plaintiffs**

v.

**MERCK–MEDCO MANAGED CARE, LLC; Medco Health Solutions, Inc.; Merck–Medco RX Services of Florida, No. 2, LC, et al., Defendants**

No. 00–CV–737.

United States District Court, E.D. Pennsylvania.

Oct. 12, 2004.

James G. Sheehan, Associate United States Attorney, United States Attorney's Office, Philadelphia, PA, Counsel for the United States.

Marc S. Raspanti, Esquire, Michael A. Morse, Esquire, Miller Alfano & Raspanti, P.C., Philadelphia, PA, Alison M. Duncan, Esquire, Robert T. Rhoad, Esquire, Porter, Wright, Morris & Arthur, Washington, DC, Counsel for Plaintiffs'/Relators' Hunt and Gauger.

### MEMORANDUM ORDER

SCUDERI, United States Magistrate Judge.

AND NOW, this 12th day of October, 2004, after consideration of a Motion to Compel Testimony From Susan Elliott filed by the United States Government, *et al.* (collectively, "Plaintiffs") (No. 206), the Response of Defendants, Merck–Medco

Managed Care, LLC, *et al.* ("Medco Defendants") (No. 218), Plaintiffs Reply (No. 232), and Medco Defendants' Sur–Reply (No. 238), it is hereby ORDERED that the Motion is GRANTED, as follows:[1]

1. In the instant motion, Plaintiffs seek to compel additional testimony from Susan Elliott, a former employee of Medco Defendants. Plaintiffs deposed Ms. Elliott on July 28, 2004, at which time she testified that she did not have her own attorney, and that she was not represented by counsel for Medco Defendants. *See* Deposition Transcript at 7:8–16, attached to Plaintiffs' Br. as Exhibit "A." Counsel for Medco Defendants confirmed that they did not represent Ms. Elliott. *See id.* at 92:7–10. Nevertheless, counsel for Medco Defendants asserted the attorney-client privilege and instructed Ms. Elliott not to answer any questions concerning communications between Medco Defendants and Ms. Elliott in preparation for her deposition, or concerning communications that occurred during breaks in her deposition. *See id.* at 91: 12–23; 141: 6–25; 142, 1–16; 243: 11–20; 247: 3–9; and 248: 15–17. Ms. Elliott complied with all instructions not to answer such questions. *See id.*

2. Statements made under oath by Ms. Elliott at her deposition clearly differed from statements she previously made regarding certain activities which are material to this case. *Compare* Ms. Elliott's statement in Medco Defendants' Final Report regarding the Tampa II Investigation, attached to Plaintiffs' Traverse at Exhibit "A," with Ms. Elliott's Deposition Transcript at 88: 8–10, attached to Plaintiffs' Br. as Exhibit "A." As a result, Plaintiffs seek additional testimony from Ms. Elliott regarding four (4) specific categories of questions:

a. Statements made by Medco Defendants' counsel to Ms. Elliott regarding the nature of the case;

b. Statements made by Ms. Elliott to Medco Defendants' counsel regarding her conversations with Government investigators;

c. Descriptions and/or summaries of witness testimony provided to Ms. Elliott by counsel for Medco Defendants; and

d. Conversations between counsel for Medco Defendants and Ms. Elliott while she was under oath during the deposition.

*See* Traverse at 4. Plaintiffs argue that they are entitled to question Ms. Elliott on these topics because her communications with corporate counsel had the potential to "affect, influence or change" Ms. Elliott's testimony. *Id.*

3. Medco Defendants oppose the current motion, arguing that all of the communications at issue between Ms. Elliott and counsel for Medco Defendants are protected by the attorney-client privilege because the privilege should be applied in the same way for former employees as for current employees. *See* Medco Defendants' Response at 4–9; Sur–Reply at 1–6.

■ 4. In *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Supreme Court held that a corporation's attorneys' conversations with *current* corporate employees could be covered by the attorney-client privilege. 449 U.S. at 394, 101 S.Ct. 677. The privilege applies when the conversations: (1) were made to the corporate counsel, acting as such; (2) were made at the direction of corporate supervisors for the purpose of securing legal advise from counsel; (3) concerned matters within the scope of the

---

1. This matter is before me pursuant to the governing Case Management Order signed by the Honorable Clarence C. Newcomer, District Court Judge for the Eastern District of Pennsylvania.

employees' corporate duties; and (4) the employees were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice. *See id.* In a concurring opinion, Chief Justice Berger opined that the attorney-client privilege should be extended to protect communications between corporate counsel and *former* employees. *See id.* at 402–403, 101 S.Ct. 677 (Berger, C.J., concurring). Nevertheless, the Supreme Court in *Upjohn* left open the question of whether communications between corporate counsel and former employees were included within the privilege. *See Peralta v. Cendant Corp.*, 190 F.R.D. 38, 39 (D.Conn.1999).

5. As noted by the parties, the Third Circuit has not addressed the question left open by the Supreme Court in *Upjohn*. Moreover, although this Court has acknowledged that the *Upjohn* privilege may apply to former employees as well as current employees, *see Stabilus v. Haynsworth, Baldwin, Johnson & Greaves*, 1992 WL 68563 (E.D.Pa. Mar 31, 1992), that case is factually distinguishable and did not specifically address whether corporate counsel's communications with a former employee are privileged as to the four (4) discrete topics at issue in the instant motion.[2]

6. Fortunately, other federal courts have addressed the present issue under similar circumstances. In *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303 (E.D.Mich.2000), the District Court for the Eastern District of Michigan extended the privilege over former employees, but limited it to communications which themselves were privileged and which occurred during the employment relationship. The Court explained that the willingness of former employees to provide information is generally unrelated to directions from former corporate superiors and, therefore, "counsel's communications with a former employee of the client corporation generally should be treated no differently from communications with any other third-party fact witness." 197 F.R.D. at 306. In *City of New York v. Coastal Oil New York, Inc.*, 2000 WL 145748 (S.D.N.Y. Feb.8, 2000), the District Court for the Southern District of New York confronted the same issue presented here, namely, whether plaintiffs' counsel should be permitted to question a former employee of the defendant corporation about conversations he had with corporate defense counsel in preparation for his deposition, as well as conversations that may have occurred during a recess in the deposition. *See* 2000 WL 145748 at *2. The Court concluded that, because corporate counsel did not represent the former employee and there was no evidence that the conversations occurred for the purpose of legal advice, the record did not contain any basis for an assertion of the attorney-client privilege. *See id.* In so holding, the District Court in *Coastal Oil* explicitly followed the reasoning of *Peralta, supra. Id.*

2. In *Stabilus*, the court stated "that the attorney-client privilege in the corporate context extends to former employees where the purpose of a conversation between those employees and corporate counsel is to secure legal advice for the company." *Id.* at *2 (citing *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 n. 7 (9th Cir.1981)). However, in *Stabilus* the plaintiff corporation alleged that defense counsel violated state ethical rules by conducting an *ex parte* interview of plaintiff's former vice-president of finance, who had primary responsibility for the contract at issue in the case. *See* 1992 WL 68563 at *1. As a result, the holding of *Stabilus* is limited to *ex parte* communications between a former executive employee and opposing counsel where there was a real or perceived risk of disclosure of confidential information. Such an *ex parte* communication is not at issue here. More importantly, the court in *Stabilus* did not specifically address any privilege issues regarding corporate counsel's communications with a former employee.

7. In *Peralta*, the District Court for the District of Connecticut rejected a defendant corporation's attempt to utilize the attorney-client privilege to block all questions about communications between corporate counsel and a former employee. *See* 190 F.R.D. at 40–41. Instead, the court limited the privilege to communications that either: (1) concerned knowledge obtained or conduct that occurred during the course of the former employee's employment; or (2) related to communications which were themselves privileged and which occurred during the employment relationship. *Id.* Importantly, the court specified that the attorney-client privilege would *not* apply in certain specific circumstances, such as to information given by corporate counsel to the former employee regarding the testimony of other witnesses, or to discussions between the former employee and corporate counsel during breaks in a deposition. *Id.* at 41; *see also Coastal Oil,* 2000 WL 145748 at *2 (finding plaintiffs' questioning of former employee of defendant corporation limited to activities by corporate counsel which aided former employee in preparing for his deposition, such as actions and statements which "refreshed" former employee's recollection and references to testimony of other witnesses, and to instructions former employee received from corporate counsel regarding his testimony). These are virtually the same circumstances present here. Moreover, the court in *Peralta* explained that allowing limited discovery regarding such communications was particularly necessary "given their potential to influence a witness to conform or adjust her testimony to such information, consciously or unconsciously." *Id.* The identical concern is present here.

■ 8. The Court is persuaded by the reasoning set forth in the aforementioned cases, as well as both the reasoning and the practical solutions set forth by the District Courts in *Peralta* and *Coastal Oil.* The Court is aware of potential difficulties in separating facts developed during litigation, which are not privileged pursuant to the aforementioned case law, and facts known by the employee as a result of her employment, which likely would be privileged. However, as the court in *Peralta* made clear, the line to be drawn is not difficult: if the communication sought to be elicited relates to Ms. Elliott's conduct or knowledge *during* her employment with Medco Defendants, or if it concerns conversations with corporate counsel that occurred *during* her employment, the communication is privileged; if not, the attorney-client privilege does not apply. *See Peralta,* 190 F.R.D. at 41–42.

■ 9. As a result of the foregoing—and because it is apparent that the communications between Ms. Elliott and Medco Defendants' may have influenced her testimony—Plaintiffs' motion is granted. However, Plaintiffs may obtain additional testimony from Ms. Elliott *only* regarding the four (4) specific avenues of inquiry previously discussed, and in a manner consistent with the limitations set forth above.

It is so ordered.